## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COOK CHILDREN'S HEALTH FOUNDATION a/k/a W.I. COOK FOUNDATION, INC., on behalf of itself and a class of similarly situated persons,<br><br>    Plaintiff,<br><br>  vs.<br><br>DIAMONDBACK E&P LLC,<br><br>    Defendant. | Case No. CIV-21-359-D |

**PLAINTIFF'S UNOPPOSED MOTION TO CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES, TO PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT, TO APPROVE THE FORM AND MANNER OF NOTICE, AND TO SET A DATE FOR A FINAL FAIRNESS HEARING**

Rex A. Sharp
Scott B. Goodger
Sharp Law, LLP
4820 W. 75th Street
Prairie Village, KS 66208
Phone:  (913) 901-0505
rsharp@midwest-law.com
sgoodger@midwest-law.com

Michael E. Grant
Grant Law Firm, PLLC
At the Midtown Law Center
512 Northwest 12th Street
Oklahoma City, OK 73103-2407
Phone:  (405) 232-6357
de1471@coxinet.net

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**

## TABLE OF CONTENTS

SUMMARY OF LITIGATION ................................................................................................1

ARGUMENT AND AUTHORTIES ...................................................................................3

  A. The Court Should Certify the Settlement Class for Settlement Purposes ............................3

    1. Numerosity.................................................................................................................5

    2. Commonality..............................................................................................................5

    3. Typicality...................................................................................................................7

    4. Adequacy of Representation ......................................................................................7

    5. Predominance.............................................................................................................8

    6. Superiority................................................................................................................10

  B. The Court Should Grant Preliminary Approval of the Proposed Settlement. ....................10

    1. Plaintiff and Its Counsel Have Adequately Represented the Settlement Class .............12

    2. The Proposed Settlement Was Negotiated at Arm's Length ...........................................14

    3. The Relief Provided for the Class Is Fair and Adequate, Taking into Account: ............15

      (i)    The Costs, Risks, and Delay of Trial and Appeal.................................................15

      (ii)   The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Members' Claims ..............................16

      (iii)  The Terms of Any Proposed Award of Attorneys' Fees Including Timing of Payment.........................................................................................................17

      (iv)  Any Agreement Required to be Identified Under Rule 23(e)(3) ........................18

    4. The Settlement Agreement Treats Class Members Equitably Relative to Each Other .....................................................................................................................18

  C. The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Class ..................................................................................................................18

  D. Appointment of JND Legal Administration as Settlement Administration Is Proper.........21

  E. Appointment of Citibank as Escrow Agent Is Proper .......................................................22

CONCLUSION ..................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Fed. Power Comm'n,*
   465 F.2d 1250 (10th Cir. 1972) .......................................................................... 11

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.,*
   275 F.R.D. 325 (D. Kan. 2011) ............................................................................ 9

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.,*
   167 F. Supp. 2d 1216 (D. Colo. 2001) ............................................................... 11

*Bollenbach Enters., L.P. v. Okla. Energy Acquisitions, L.P., et al.,*
   No. CIV-17-0134-HE (W.D. Okla. Dec. 7, 2017) ........................................ 6, 17

*CCG Holding Co. v. Hutchens,*
   773 F.3d 1076 (10th Cir. 2014) ........................................................................... 8

*Cecil v. BP Am. Prod. Co.,*
   No. CIV-16-410-KEW (E.D. Okla. 2018) .................................................... 6, 17

*Cline v. Sonoco, Inc.,*
   333 F.R.D. 676 (E.D. Okla. 2019) ....................................................................... 5

*D'Amato v. Deutsch Bank,*
   236 F.3d 78 (2d Cir. 2001) ................................................................................ 14

*DG v. Devaughn,*
   594 F.3d 1188 (10th Cir. 2010) .................................................................. 4, 6, 7

*Harris v. Chevron U.S.A., Inc., et al.,*
   No. 19-cv-355-SPS  (E.D. Okla. Nov. 19, 2019) ............................................... 6

*Horn v. Associated Wholesale Grocers, Inc.,*
   555 F.2d 270 (10th Cir. 1977) ............................................................................. 5

*In re Motor Fuel Temp. Sales Practices Litig.,*
   258 F.R.D. 671 (D. Kan. 2009) .......................................................................... 11

*In re Motor Fuel Temperature Sales Prac. Litig.,*
   271 F.R.D. 263 (D. Kan. 2010) .................................................................... 4, 10

*In re Telik, Inc. Sec. Litig.,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................... 14

*In re Urethane Antitrust Litig.,*
    768 F.3d 1245 (10th Cir. 2014) ......................................................................... 8

*Lucas v. Kmart Corp.,*
    234 F.R.D. 688 (D. Colo. 2006) ..................................................... 11, 12, 15, 19

*McKnight Realty Co. v. Bravo Arkoma, LLC, et al.,*
    No. CIV-17-308-KEW, Doc. 53 (E.D. Okla. Sept. 6, 2018) ............................. 6

*Milonas v. Williams,*
    691 F.2d 931 (10th Cir. 1982) ........................................................................... 6

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306, (1950) ........................................................................................ 19

*Naylor Farms, Inc. v. Chaparral Energy, LLC,*
    923 F.3d 770 (10th Cir. 2019) ................................................................... 6, 7, 9

*Reed v. GM Corp.,*
    703 F.2d 170 (5th Cir. 1983) ........................................................................... 14

*Rutter Wilbanks Corp. v. Shell Oil Co.,*
    314 F.3d 1180 (10th Cir. 2002) ......................................................................... 8

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.,*
    749 F.2d 1451 (10th Cir. 1984) ....................................................................... 10

*Tennille v. Western Union Co.,*
    785 F.3d 422 (10th Cir. 2015) ........................................................................... 3

*Trujillo v. Colo.,*
    649 F.2d 823 (10th Cir. 1981) ......................................................................... 11

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ................................................................................... 6, 9

*Wilkerson v. Martin Marietta Corp.,*
    17 F.R.D. 273 (D. Colo. 1997) ........................................................................ 14

**Statutes and Authorities**

Fed. R. Civ. P. 23 ..........................................................................1, 3, 5, 7, 8, 12, 18, 20, 21

Manual For Complex Litigation § 13.14 (4th ed. 2004) ....................................................11

Newberg On Class Actions § 3:10 (5th ed. 2011) ..............................................................6

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Cook Children's Health Foundation a/k/a W.I. Cook Foundation, Inc. ("Plaintiff"), on behalf of itself and a class of similarly situated persons described below (collectively, the "Settlement Class") respectfully moves for an Order preliminarily approving the Parties' proposed class action settlement. Specifically, Plaintiff requests an Order that will:

(1) provisionally certify the Settlement Class for settlement purposes;

(2) preliminarily approve the Settlement Agreement;

(3) appoint Plaintiff as Class Representative for the Settlement Class;

(4) appoint Rex A. Sharp and Scott B. Goodger of Sharp Law, LLP as Class Counsel for the Settlement Class;

(5) approve the form and manner of the proposed Notice to the Settlement Class;

(6) appoint JND Legal Administration as Settlement Administrator;

(7) appoint Citibank as Escrow Agent; and

(8) set a hearing date for final approval of the Settlement Agreement and application for an award of Plaintiff's Attorneys' Fees, Litigation Expenses, and Administration, Notice, and Distribution Costs, and an Incentive Award to Plaintiff. The Settlement Agreement and its exhibits are attached in their entirety as Exhibit A hereto.

As grounds for this Unopposed Motion, Plaintiff states as follows:

## SUMMARY OF THE LITIGATION

This case concerns the calculation of royalties paid on natural gas from wells owned and operated by Diamondback E&P, LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates are lessees or successors-in-

interest under oil and gas leases, and their respective predecessors, successors, assigns, and their past, present and future officers, directors, affiliates, employees, agents, servants, and representatives, excluding, however, QEP Resources, Inc (collectively, the "Diamondback Entities") in Texas.  On April 16, 2021, Plaintiff filed its Class Action Complaint [Dkt. #1] alleging that the Diamondback Entities underpaid royalties to Plaintiff and similarly situated royalty owners.  Plaintiff alleged that, under the terms of the plain language of the relevant oil and gas leases, the Diamondback Entities were required to pay royalties on gas used as fuel in off-lease operations but did not do so.  *See* Compl. [Dkt. #1] at ¶¶ 1-2.

In its Complaint, Plaintiff sought damages in the amount of the unpaid royalties, plus interests, costs and fees, and further sought to certify its claims on behalf of a proposed class of similar royalty owners.  *See* Compl. [Dkt. #1] at 10 (Prayer for Relief). Diamondback responded to Plaintiff's allegations, denying that it underpaid royalties to Plaintiff or the proposed class.  *See* Answer [Dkt. #29] at ¶¶ 29-35.

Over the past two years, the Parties have engaged in extensive factual discovery, including the production and review of over 8,000 oil and gas leases, dozens of sales and related contracts, and over 2.3 gigabytes of monthly royalty accounting data covering a period of over ten years, royalties paid on the production from over 2,800 wells to over 5,500 royalty owners.  The Parties engaged expert witnesses with wide-ranging experience in oil and gas accounting to evaluate this data and to assist the Parties in assessing the factual and legal issues underlying their claims and defenses.

In July 2023, the Parties agreed to mediate their disputes upon the completion of production and review of additional royalty accounting data. The Parties engaged Robert G. Gum, Esq., to serve as mediator. Mr. Gum is a partner at Gum Puckett & Mackechnie, LLP, and has significant experience mediating oil-and-gas class actions. The Court, upon motion from the Parties, agreed to an extension of discovery and class certification deadlines to facilitate the Parties' mediation efforts. *See* Order [Dkt. #41].

On July 18, 2023, the Parties mediated with Mr. Gum at this office, and successfully reached agreement on the terms of a class action settlement agreement, subject to drafting mutually acceptable settlement documents. The Parties spent the following weeks preparing settlement documents, including the Settlement Agreement. On November 16, 2023, the Parties signed the Settlement Agreement, which Plaintiff now submits to the Court for preliminary approval.

## ARGUMENT AND AUTHORITY

### A.    The Court Should Certify the Settlement Class for Settlement Purposes

In considering a proposed class action settlement, federal courts determine whether the action can be maintained as a class action under Rule 23. *See, e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015). Rule 23 has four factors for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Rule 23(b) also examines whether common questions predominate over individual issues, and whether a class action is superior to other methods of litigation. *See* Fed. R. Civ. P. 23(b).

Federal courts have "considerable discretion" in making class certification decisions. *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit defers to a trial court's certification ruling where "it applies the proper Rule 23 standard and its decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand." *Id.* (citation and internal quotations omitted). In the settlement context, however, the court does not consider trial manageability under Rule 23(b)(3)(D). *See In re Motor Fuel Temperature Sales Prac. Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

The Parties have stipulated to: (1) the certification of the Settlement Class for settlement purposes; (2) the appointment of Plaintiff as the Class Representative; and (3) the appointment of Rex A. Sharp and Scott B. Goodger of Sharp Law, LLP as Class Counsel for the Settlement Class. *See* Exhibit A at ¶ 3.1. The Parties therefore jointly move the Court to certify a Settlement Class defined as follows:

> All royalty owners in Texas wells where Diamondback E&P LLC Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from April 1, 2011 to July 31, 2023 under oil and gas leases which expressly contain the off-lease use of gas royalty clause, the on-lease free use clause, or both, and in which Diamondback E&P, LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates are lessees or successors-in-interest under such agreements (collectively, the "Diamondback Entities").

> Excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) agencies, departments or instrumentalities of the State of Texas; (3) Diamondback Entities and their affiliates, officers, and directors; (4) any publicly traded entity (and its affiliates) that produces,

gathers, processes, or markets gas; (5) the claims of royalty owners to the extent covered by arbitration clauses or prior settlement agreements, if any, still in effect on the date this lawsuit was filed; and (6) royalty paid by the Diamondback Entities only as a pass-through for other non-affiliated entities, except to the extent any claims are asserted against the Diamondback Entities that arise from such royalty paid.

*Id.* ¶ 1.41.  Certification of the Settlement Class for settlement purposes furthers the interests of Settlement Class Members and the Diamondback Entities by allowing the case to be settled on a class-wide basis.  The proposed Settlement Class satisfies the requirements of Rule 23, and thus the Court should grant class certification.

### 1.    Numerosity

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable."  *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (holding class as small as 46 members is sufficient).  Here, the Settlement Class consists of over five thousand royalty owners disbursed throughout Oklahoma, Texas, and many other states, making joinder of all Class Members impracticable.  *See Cline v. Sonoco, Inc.*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) ("[T]he proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1).").  The Parties agree that, based on their review of relevant accounting records, the Settlement Class includes over five thousand royalty owners.  *See* <u>Exhibit A</u> at ¶ 1.41.  Numerosity, therefore, is satisfied.

### 2.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  A "common question is one where 'the same evidence will suffice for each

member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). "Factual differences in the claims of class members should not result in a denial of class certification where common questions of law exist." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). The plaintiff need only show a single issue common to all members of the class. *See DG*, 594 F.3d at 1195; NEWBERG ON CLASS ACTIONS § 3:10, at 272-73 (5th ed. 2011).

Federal courts in Oklahoma have certified similar class actions many times, finding common issues existed for oil-and-gas royalty underpayment class claims. *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. CIV-16-410-KEW, Dkt. # 224 (E.D. Okla., Nov. 5, 2018) (preliminarily approving royalty underpayment class action for settlement purposes); *Bollenbach Enters., L.P. v. Okla. Energy Acquisitions, L.P., et al.*, No. 17-CV-134-HE, Dkt. #41 (W.D. Okla. Dec. 7, 2017) (same); *Harris v. Chevron U.S.A., Inc., et al.*, No. 19-cv-355-SPS, Doc. 22 (E.D. Okla. Nov. 19, 2019) (same); *McKnight Realty Co. v. Bravo Arkoma, LLC, et al.*, Case No. CIV-17-308-KEW, Doc. 53 (E.D. Okla. Sept. 6, 2018) (same). Further still, federal courts in Oklahoma have certified these claims on a contested basis. *See, e.g.*, *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779 (10th Cir. 2019).

Plaintiff's underpayment claims involve common questions of law and fact, including whether the Settlement Class's leases contain language addressing the payment of royalties on off-lease fuel gas, or contain free-use clauses, and whether the Diamondback Entities were required to pay royalties on off-lease fuel gas. The Tenth

Circuit affirmed class certification of similar underpayment claims under Rule 23.  *See Naylor Farms*, 923 F.3d at 798.

### 3.    Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  To meet this requirement, "[e]very member of the class need not be in a situation identical to that of the named plaintiff." *DG*, 594 F.3d at 1195 (citation omitted).  Rather, "[p]rovided the claims and Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality."  *Id.* at 1198-99.

Plaintiff's claims are typical of the Settlement Class' claims because Plaintiff alleges that it owns a royalty interest under a lease that requires the Diamondback Entities to pay royalties on off-lease fuel use, and that the Diamondback Entities breached that obligation.  *See* Compl. [Dkt. #1] at ¶ 2.  Put differently, the same legal theories and issues of fact underlie the claims of the Settlement Class and Plaintiff.  Consequently, all Class Members who did not receive royalties on off-lease fuel gas have suffered the same injury arising out of similar facts.  Further, the Diamondback Entities have agreed the Settlement Class should be certified for settlement purposes, subject to all rights reserved in the Settlement Agreement.  *See* Exhibit A at ¶¶ 1.41,  9.1-9.4.  The Settlement Class satisfies typicality.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to show they "will fairly and adequately protect the interests of the class."  In the Tenth Circuit, adequacy is satisfied when (1) neither the

plaintiff nor its counsel has interests that conflict with the interests of other class members, and (2) the plaintiff will prosecute the action vigorously through qualified counsel. *See Rutter Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188-89 (10th Cir. 2002). No conflicts exist between Plaintiff or its counsel and other members of the Settlement Class. To the contrary, Plaintiff shares the same incentive as the Settlement Class to vigorously prosecute this case and obtain recovery.

Plaintiff has done so, vigorously prosecuting this case through qualified counsel. Plaintiff's counsel are highly experienced in class actions, particularly class actions related to oil-and-gas royalty payments. Plaintiff's counsel have been appointed as lead counsel in multiple previous class actions, including numerous class actions in this Court. Plaintiff and its counsel satisfy adequacy of representation.

### 5.    Predominance

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members." "'The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted); *see also, e.g.*, *CCG Holding Co. v. Hutchens*, 773 F.3d 1076, 1087 (10th Cir. 2014) (same); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("Classwide proof is not required for all issues. Instead, Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized questions."). Thus, when

"one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). Where, as here, Plaintiff and the Settlement Class' claims stem from a "'common nucleus of operative facts,'" common issues predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

The Settlement Class satisfies predominance. The common questions of lease language and whether the Diamondback Entities owed royalties on gas used off-lease as fuel predominate over individual issues, as the Tenth Circuit recently affirmed in *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 770 (10th Cir. 2019). This alleged common conduct gave rise to each Settlement Class Member's claims, resulting in a sufficiently cohesive Settlement Class to warrant adjudication by representation. Because every Class Member's claims arise from the Diamondback Entities' methodology on the payment of royalties on off-lease fuel usage, common questions predominate over any individual issues.

Further, the Diamondback Entities have agreed that the Settlement Class should be certified for settlement purposes, subject to all rights reserved in the Settlement Agreement. *See* <u>Exhibit A</u> at ¶¶ 1.41, 9.1-9.4. Cook and the Settlement Class satisfy predominance.

### 6.    Superiority

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy."  In considering the superiority of a class action, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)."  *Motor Fuel*, 217 F.R.D. at 269.

Superiority is satisfied here.  Here, although liability may be substantial in the aggregate, the average Class Member's damages likely would not warrant the bringing of individual lawsuits.  Nor are there any anticipated difficulties managing the case as a class action for settlement purposes only.  For these reasons, Plaintiff's claim for royalty underpayment is well-situated for class-wide resolution.  Further, the Diamondback Entities have agreed the Settlement Class should be certified for settlement purposes, subject to all rights reserved in the Settlement Agreement.  *See* <u>Exhibit A</u> at ¶¶ 1.41, 9.1-9.4.  A class action is the superior method of fair and efficient adjudication in this matter.

### B.    The Court Should Grant Preliminary Approval of the Proposed Settlement.

Courts strongly favor settlement as a method for resolving disputes.  *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also*

*Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy

concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*,

465 F.2d 1250, 1354 (10th Cir. 1972). This is particularly true in large, complex class

actions such as this one. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216,

1229 (D. Colo. 2001).

Federal courts will approve a class action settlement when Rule 23's requirements

for class certification are met, and when the settlement is fair to the class members.

Proposed class action settlements follow a two-step process. *See In re Motor Fuel Temp.*

*Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see also* MANUAL FOR

COMPLEX LITIGATION § 13.14 (4th ed. 2004). *First*, the Court conducts a preliminary

analysis to determine if there is any reason not to notify the class or proceed with the

proposed settlement. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

*Second*, after the Court preliminarily approves the settlement, the class is provided notice

and an opportunity to be heard at a final fairness hearing, at which time the Court

considers whether the settlement should be finally approved. *See In re Motor Fuel*, 258

F.R.D. at 675.

As to the first step, "the Court will ordinarily grant preliminary approval where the

proposed settlement appears to be the product of serious, informed, noncollusive

negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class and falls within the range of

possible approval." *Id.* at 675 (citation and internal quotations omitted). While "[t]he

standards of preliminary approval are not as stringent as those applied for final approval,"

courts frequently refer to the final approval factors to determine whether a proposed settlement should be preliminarily approved. *Id.* at 675-76.

For purposes of preliminarily approval under Rule 23, federal courts consider whether:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members' claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment;

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed Settlement Agreement satisfies each of these requirements.

### 1.    Plaintiff and Its Counsel Have Adequately Represented the Settlement Class

Under this factor, the Court should consider that "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory committee's notes (2018). Here, the breadth and volume of the information reviewed by Plaintiff's counsel demonstrates the amount of work that

Plaintiff and its counsel have undertaken in this case. Plaintiff's counsel has engaged in substantial discovery experts by reviewing over 8,000 oil and gas leases, dozens of sales contracts, and reviewing over 2.3 gigabytes of royalty accounting data produced by the Diamondback Entities over a period of 18 months.

The data reviewed spans over a decade of monthly royalty payments to thousands of royalty owners paid on the production and sale of natural gas under sales contracts from 2011 to 2022. Further, Plaintiff and its counsel engaged experts to review the information produced by the Diamondback Entities so the Parties could appropriately consider the possibility of resolution. For two years, Plaintiff's counsel worked with experts to fully understand the Diamondback Entities' accounting data and develop a damages model. This required frequent meetings, communications, and exchanges of additional data and material between the Parties and their experts.

Further, as discussed *supra*, Plaintiff's counsel has served as counsel in several prior class action settlements involving claims of royalty underpayment similar to those claims asserted in this case. Plaintiff's counsel currently is involved in several other currently pending putative class actions asserting the same or similar underpayment claims at issue here.

The efforts of Plaintiff's counsel in other cases have laid the groundwork for the favorable Settlement Agreement reached in this case. The Settlement Agreement reached with the Diamondback Entities is similar to the recovered value reached in similar oil-and-gas actions.

13

## 2.    The Proposed Settlement Was Negotiated at Arm's Length

"[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  Here, prior to reaching the Settlement, Plaintiff's counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with experts. The Settlement Agreement is the product of arm's-length negotiations between Plaintiff and the Diamondback Entities and their experienced counsel at a point when Plaintiff and the Diamondback Entities possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases.

Prior to reaching the Settlement Agreement, the Parties went through a work-intensive mediation process.  "The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 17 F.R.D. 273, 285 (D. Colo. 1997).  An experienced mediator's involvement "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsch Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

14

Here, the Parties engaged Robert G. Gum, Esq., to serve as mediator.  Mr. Gum is a partner at Gum, Puckett & Mackechnie, LLP, and has significant experience mediating oil-and-gas class actions like this one.  Should the Court grant preliminary approval of the Settlement Agreement, Plaintiff intends to obtain an affidavit from Mr. Gum as to his opinion on the fairness of the Settlement Agreement, given his extensive work as a neutral and in this case and others involving the same or similar claims.

The Settlement Agreement negotiated in this case is the product of mutual, zealous advocacy, and considers the relative strength and weakness of each side's case.  The second factor supports preliminary approval.

       **3.    The Relief Provided for the Class Is Fair and Adequate, Taking into Account:**

           *(i)    The Costs, Risks, and Delay of Trial and Appeal*

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits … it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693-94 (D. Colo. 2006) (citation and internal quotations omitted).  As strongly as both sides feel about the merits of their positions, each side recognizes serious questions of law and fact exist in this case.

Though the Parties ultimately agreed to a settlement amount, they still strongly disagree on many factual and legal issues.  The Diamondback Entities deny all allegations of wrongdoing or liability.  *See* Exhibit A at ¶ 11.1.  The Diamondback Entities have entered into the Settlement Agreement solely to eliminate the burden,

expense, and distraction of further litigation.  *See id.*  Plaintiff is optimistic about its

chances of success on obtaining certification and at trial on the merits, but it recognizes

that there are significant obstacles it would have to overcome to achieve success on

behalf of the Settlement Class.  Serious questions of law and fact are still in dispute, and

the favorable Settlement Agreement renders the resolution of these questions unnecessary

and provides a guaranteed recovery in the face of uncertainty.

>     *(ii)*     ***The Effectiveness of Any Proposed Method of Distributing***
>             ***Relief to the Class, Including the Method of Processing***
>             ***Class Members' Claims***

The proposed distribution method for this common-fund settlement will be highly

effective.  Pursuant to the Settlement Agreement, the Diamondback Entities have

provided (or will provide) Plaintiff's counsel with their payment history data for

payments made by the Diamondback Entities for wells located in Texas and burdened by

leases within the Settlement Class definition, including the names, last known addresses,

and tax identification numbers of persons or entities receiving those payments.  *See id.*

¶ 3.3.  The Settlement Administrator will make reasonable efforts to: (a) verify the last-

known address of Settlement Class Members provided by the Diamondback Entities, and

(b) locate current addresses of any potential Settlement Class Members for whom the

Diamondback Entities have not provided addresses.  *See id.* ¶ 3.4.

Subject to the Court's approval, Plaintiff's counsel will allocate the Net Settlement

Amount to individual Settlement Class Members who are participating in the Settlement

based on numerous factors that are regularly used to allocate class settlements of this

nature.  *See id.* ¶ 6.2.  The Net Settlement Amount then will be distributed by the

Settlement Administrator as soon as reasonably possible after final approval has been obtained for the Settlement Agreement. *See id.* ¶¶ 6.6-6.9. The Settlement Agreement specifies deadlines for distributing the Net Settlement Amount. *See id.* ¶ 6.8. Plaintiff's counsel has had this distribution method approved and utilized in other royalty class action settlements. *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. CIV-16-410-KEW (E.D. Okla. 2018); *Bollenbach Enters., L.P. v. Okla. Energy Acquisitions, L.P.*, No. CIV-17-0134-HE (W.D. Okla.).

Unlike many other class action settlements approved in federal court, the Settlement Agreement does not require Settlement Class Members to submit claim forms in order to receive their share of the Net Settlement Amount. To the contrary, all Settlement Class Members who do not affirmatively exclude themselves from the Settlement Class will automatically receive a check without the burden of submitting a claim form. *See* <u>Exhibit A</u> at ¶¶ 6.1-6.9.

### (iii) *The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment*

Under the terms of the Settlement Agreement, Plaintiff's counsel will apply to the Court for an award of attorneys' fees no later than twenty-eight days before the Final Approval Hearing. *See id.* ¶ 7.1. Plaintiff's Counsel anticipate that they will seek a fee award of no more than 40% percent of the Gross Settlement Amount. Plaintiff's Counsel have obtained an excellent recovery for Settlement Class Members in the form of a $11,975,580 cash payment. *See id.* ¶ 2.2. Under the Settlement Agreement, Plaintiff's attorneys' fees are to be paid to Plaintiff's Counsel from the Gross Settlement Amount, to

the extent practicable through reasonably diligent efforts by the Escrow Agent, one business day following the date the Judgment becomes Final and Non-Appealable.  *See id.* ¶ 7.2.

### (iv)    *Any Agreement Required to be Identified Under Rule 23(e)(3)*

The Parties have entered into the Settlement Agreement, which is submitted in full at Exhibit A.  The Parties also are negotiating a standard escrow agreement in order to hold the Gross Settlement Amount in escrow as required by the Settlement Agreement. *See* Exhibit A at ¶¶ 1.14, Section 5.

### 4.    The Settlement Agreement Treats Class Members Equitably Relative to Each Other

The Settlement Agreement treats Settlement Class Members equitably relative to each other.  All Settlement Class Members will receive their proportionate share of the Net Settlement Amount based on numerous factors that are regularly used, and approved by federal courts, to allocate class settlements of this nature.  *See id.* ¶ 6.2.

Because all four factors weigh in favor of the Settlement Agreement here, Plaintiff respectfully requests the Court grant preliminary approval of the Settlement Agreement.

### C.    The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Class

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(e)(1)(B) further instructs federal courts to

"direct notice in a reasonable manner to all class members who would be bound by the proposal."

As to content, a settlement notice should be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the [proposed settlement] and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry … is reasonableness." *Lucas*, 234 F.R.D. at 696 (citation and internal quotations omitted).

Plaintiff has submitted to the Court for approval a Notice of Settlement, which includes a postcard Notice, a Notice for publication on the settlement website, and a summary Notice that will be published in various newspapers. The Notice of Settlement documents are attached to the Settlement Agreement as Exhibits 4, 5, and 6.

As set forth in the Settlement Agreement, Plaintiff and the Diamondback Entities have agreed that, no later than thirty (30) days after the entry of the Preliminary Approval Order, or at such time as is ordered by the Court, the Court-appointed Settlement Administrator shall begin disseminating the Notice by sending a copy of the postcard Notice (Settlement Agreement, Exhibit 4) via first-class mail to the last known mailing address of each Class Member who can be identified with reasonable effort to do so and also post the Notice (Settlement Agreement, Exhibit 5) on an Internet website dedicated to the Settlement Agreement. *See* Exhibit A at ¶¶ 3.5-3.6. Plaintiff and the Diamondback Entities further agreed that the Settlement Administrator also shall publish (or cause to be published) the Notice (Settlement Agreement, Exhibit 6) one time in each

of the following newspapers: (a) *The Oklahoman*, a paper of general circulation in Oklahoma; (b) *The Dallas Morning News*, a paper of general circulation in Texas; and (c) *The Houston Chronicle*, a paper of general circulation in Texas. *Id.* ¶ 3.5.

After mailing the postcard Notice of Settlement and continuing through the date of the Final Fairness Hearing, the Settlement Administrator also will display (or cause to be displayed) on an Internet website dedicated to this Settlement the following documents: (a) the Notice of Settlement; (b) the Complaint; (c) this Settlement Agreement; (d) the Preliminary Approval Order; and (e) other publicly filed documents related to the Settlement. *See id.* ¶ 3.6. The Notices shall direct Settlement Class Members to this website for additional information. The documents also will be available on the Court's docket.

In accordance with Rule 23(c)(2)(B), the proposed Notice will fully inform Settlement Class Members about the Litigation, the proposed Settlement Agreement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. The Notices clearly describe: (i) the terms and operations of the Settlement Agreement; (ii) the nature and extent of the release of claims; (iii) Plaintiff's counsel's intent to request attorneys' fees, reimbursement of expenses, and incentive awards; (iv) the procedure and timing for objecting to the Settlement; (iv) the procedure and timing for objecting to the Settlement Agreement; (v) the procedure and timing for requesting exclusion from the Settlement Class; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement Agreement.

The Notices also provide Settlement Class Members with a toll-free number and e-mail address for Settlement-related inquiries, and a URL address for the dedicated Settlement website where Settlement Class Members may obtain additional information. The Notices therefore are reasonably calculated to apprise the interested parties of the pendency of the Settlement Agreement and afford them an opportunity to opt out of the Settlement Class or to object.  As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due process.  The Court should approve the Notices and the manner through which they will be delivered and communicated to the Settlement Class Members.

### D.    Appointment of JND Legal Administration as Settlement Administration Is Proper

Plaintiff respectfully requests that the Court appoint JND Legal Administration ("JND") as the Settlement Administrator that will be responsible for transmitting the Notices, processing requests for exclusion, and distributing the Net Settlement Amount in accordance with a Court-approved Distribution Schedule.  JND is an experienced class action administrator that has handled many complex class action settlements.

Under the terms of the Settlement Agreement, Plaintiff, the Diamondback Entities, and their respective counsel will work directly with the Settlement Administrator for much of the notice, administration, and distribution processes.  Plaintiff therefore respectfully requests that the Court appoint JND as the Settlement Administrator.

21

### E.    Appointment of Citibank as Escrow Agent Is Proper

Plaintiff also respectfully request that the Court appoint Citibank as the Escrow Agent.  Pursuant to the terms of the Settlement Agreement, the Parties mutually agreed upon Citibank to carry out the duties assigned to the Escrow Agent.  *See* <u>Exhibit A</u> at ¶ 1.13.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the agreed proposed Preliminary Approval Order, attached as Exhibit 7 to the Settlement Agreement, that will:

(1) provisionally certify the Settlement Class for settlement purposes;

(2) preliminarily approve the Settlement Agreement;

(3) appoint Plaintiff as Class Representative for the Settlement Class;

(4) appoint Rex. A. Sharp and Scott B. Goodger of Sharp Law, LLP as Class Counsel for the Settlement Class;

(5) approve the form and manner of the proposed Notice to the Settlement Class;

(6) appoint JND Legal Administration as Settlement Administrator;

(7) appoint Citibank as Escrow Agent; and

(8) set a hearing date for final approval of the Settlement Agreement and application for an award of Plaintiff's Attorneys' Fees, Litigation Expenses, and Administration, Notice, and Distribution Costs, and an Incentive Award to Plaintiff.

DATED this November 16, 2023.        Respectfully submitted,

*/s/Rex A. Sharp*
Rex A. Sharp
Scott B. Goodger
SHARP LAW, LLP
4820 W. 75th Street
Prairie Village, KS 66208
Phone: (913) 901-0505
rsharp@midwest-law.com
sgoodger@midwest-law.com

Michael E. Grant
GRANT LAW FIRM, PLLC
At the Midtown Law Center
512 Northwest 12th Street
Oklahoma City, OK 7310-2407
Phone: (405) 232-6357
de1471@coxinet.net

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**

## CERTIFICATE OF SERVICE

     I hereby certify that on November 16, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the Electronic Case Filing System for filing.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

     John F. Shepherd
     Christopher A. Chrisman
     Michelle R. Seares
     Holland & Hart LLP
     P.O. Box 8749
     555 17th Street, Suite 3200
     Denver, CO 80201-8749
     jshepherd@hollandhart.com
     cachrisman@hollandhart.com
     mrseares@hollandhart.com

     */s/Rex A. Sharp*
     Rex A. Sharp