## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COOK CHILDREN'S HEALTH FOUNDATION a/k/a W.I. COOK FOUNDATION, INC., on behalf of itself and a class of similarly situated persons, | Case No. CIV-21-359-D |
| Plaintiff, | |
| v. | |
| DIAMONDBACK E&P, LLC, | |
| Defendant. | |

## DECLARATION OF JENNIFER M. KEOUGH ON BEHALF OF SETTLEMENT ADMINISTRATOR, JND LEGAL ADMINISTRATION LLC, REGARDING NOTICE MAILING AND ADMINISTRATION OF SETTLEMENT

I, JENNIFER M. KEOUGH, declare and state as follows:

1.     I am the Chief Executive Officer and President of JND Legal Administration ("JND").[1]  This Declaration is based on my personal knowledge, as well as information provided to me by experienced JND employees.  If called upon to do so, I could and would testify competently thereto.

2.     JND is a legal administration services provider with its headquarters located in Seattle, Washington.  JND has extensive experience in all aspects of legal administration and has administered settlements in hundreds of cases.  As CEO of JND, I am involved in all facets of our Company's operation.  Among my responsibilities is to monitor the

---

[1] Capitalized terms used and otherwise not defined in this Declaration shall have the meanings given to such terms in the Settlement Agreement or Preliminary Approval Order.

implementation of our notice and claim administration programs.  I have more than 20 years of legal experience designing and supervising such programs.

3.      JND is serving as the Settlement Administrator in the above-captioned litigation (the "Action") pursuant to the Court's Preliminary Approval Order dated January 2, 2024.

## CLASS MEMBER DATA

4.      On December 18, 2023, JND received a spreadsheet containing a total of 5,553 line items representing the names, mailing addresses, and other identifying owner information.  JND promptly loaded the potential Class Member data into a database established for this administration.

5.      Prior to effecting notice, JND certified the mailing data via the Coding Accuracy Support System ("CASS") in order to ensure the consistency of the contact information in the database and then verified the mailing addresses through the National Change of Address ("NCOA") database[2], identifying updated addresses for 261 records. JND also conducted advanced address research through TransUnion's TLO service on two (2) records with no address but for which sufficient information was available for research, but could not identify a new address for them.  Of the 5,553 potential Class Member records, a mailing address could not be located for six (6) records, leaving a total

---

[2] The NCOA database is the official United States Postal Service ("USPS") technology product which makes changes of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.  This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained on the database for 48 months.

of 5,547 unique potential Class Members with a mailing address ("Initial Class Mailing List").

**NOTICE MAILING**

6.      On January 19, 2024, JND caused the mailed Notice of Settlement to be mailed via USPS first-class mail to the 5,547 potential Class Members in the Initial Class Mailing List.  A representative sample of the mailed Notice of Settlement is attached hereto as **Exhibit A**.

7.      In the event any potential Class Member's notice is returned as undeliverable, JND uses all reasonable secondary efforts to deliver the notice to the Class Member.  This includes re-mailing any notices returned as undeliverable with a forwarding address and conducting an advanced address search using TransUnion's TLO search, where such a search had not already been conducted, for any notices returned undeliverable without a forwarding address in an attempt to locate an updated address.  JND will re-mail the notice to anyone for whom JND is able to obtain an updated address.

8.      As of the date of this Declaration, JND has tracked 93 notices that have been returned to JND as undeliverable at the address provided.  JND re-mailed four (4) notices to a forwarding address provided by USPS.  For the remaining undeliverable notices, JND conducted advanced address research through TransUnion's TLO service, which located updated addresses for 31 Class Members.  JND duly re-mailed the Notice of Settlement to those potential Class members for whom a new address was obtained.  JND also mailed the long-form Notice of Settlement to three (3) Class Members who had requested it.

**SUMMARY NOTICE**

9.     JND caused the summary Notice of Settlement to be published on January 25, 2024, in *The Oklahoman, Dallas Morning News,* and *Houston Chronicle.* Digital copies of the Notice of Settlement as seen in these publications are attached hereto as **Exhibit B**.

**SETTLEMENT WEBSITE**

10.     On January 19, 2024, JND established a dedicated website (www.cook-diamondback.com), which hosts copies of important case documents, including Class Action Complaint, the Settlement Agreement, the Preliminary Approval Order, and the Notice of Settlement, and provides answers to frequently asked questions, as well as contact information for the Settlement Administrator.  A copy of the Long Form Notice available on the website is attached hereto as **Exhibit C**.

11.     As of the date of this Declaration, the website has tracked 399 unique users with 1,043 pageviews.  JND will continue to update and maintain the website throughout the administration process and final approval process.

**TOLL-FREE INFORMATION LINE**

12.     On January 19, 2024, JND established a case-specific toll-free telephone number (1-877-595-0197) with an interactive voice recording (IVR) that Class Members can use to obtain more information about the Settlement or to speak to an associate if they have any further questions.

13.    As of the date of this Declaration, the toll-free number has received 61 calls.

## REQUESTS FOR EXCLUSION

14.    The Notice of Settlement directs that Class Members who wish to opt out of the Settlement Class could do so by mailing a valid Request for Exclusion to the Settlement Administrator, Class Counsel, and Defendant's Counsel, so that it is received on or before March 6, 2024.

15.    As of the date of this Declaration, JND has received eight (8) Requests for Exclusion from Class Members.  The persons or entities requesting exclusion are identified in the list attached hereto as **Exhibit D**. [3]

## OBJECTIONS

16.    The Notice of Settlement directs that Class Members who would like to object to the Settlement may do so by filing an objection with the Court on or before March 6, 2024.

17.    As of the date of this Declaration, JND is not aware of any objections.

---

[3] Prior to mailing the Notice of Settlement, JND also received correspondence from the Texas Land Commissioner and the Chief Clerk of the Texas General Land Office indicating that they wished to be excluded from the proposed settlement. As these requests were made in response to Defendant's 28 U.S.C. § 1715 Notice and the respondents are not Class Members, they are not included in Exhibit D.

## **SETTLEMENT ADMINISTRATION COSTS**

18.    As of January 31, 2024, JND had incurred $42,472.31 in administration fees and costs.  JND estimates the total cost of bringing the administration of the Settlement to completion will not exceed $108,148.00.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2024, at Seattle, Washington.

BY: _____

JENNIFER M. KEOUGH

# Exhibit A

*A federal court authorized this notice.*
*This is **not** a solicitation from a lawyer.*

**If You Are or Were a Royalty Owner Paid by Diamondback E&P, Diamondback Energy, or Energen Resources Corporation from a Texas Oil-and-Gas Well, You Could Be Part of a Proposed Class Action Settlement.**

*Cook v. Diamondback Settlement*
c/o JND Legal Administration
PO Box 91231
Seattle, WA 98111

    ID:

**Who is included?**
You may be a member of the Settlement Class if you are or were a royalty owner in the Class Wells located in Texas where Diamondback E&P, Diamondback Energy, or Energen Resources Corporation are or were the operator or remitted royalties to you directly. The Settlement Class has been preliminarily approved for settlement only. There are exclusions.

---

There is a proposed Settlement in a putative class action lawsuit filed against Diamondback Energy E&P, LLC ("Diamondback") called *Cook Children's Health Foundation v. Diamondback E&P, LLC*, No. 5:21-cv-00359-D, in the U.S. District Court for the Western District of Oklahoma. The Lawsuit claims Diamondback E&P, LLC, Diamondback Energy, Inc. and/or Energen Resources Corporation (collectively, the "Diamondback Entities") underpaid royalties on natural gas production from Class Wells in Texas.

**Why am I receiving this notice?** Defendant's records indicate you may be a member of the Settlement Class.

**What does the settlement provide?** The proposed Settlement provides monetary benefits of $11,975,580 that will be distributed according to the terms of the Settlement Agreement, the documents referenced in and exhibits to the Settlement Agreement, and orders from the Court. Plaintiff's Counsel will seek attorneys' fees up to 40% of the Settlement, plus reimbursement of litigation expenses and administration costs, all to be paid from the Gross Settlement Amount. Plaintiff will seek an incentive award also to be paid from the Gross Settlement Amount.

**What are my legal rights?** You do not have to do anything to stay in the Settlement Class and receive the benefits of the proposed Settlement. If you stay in the Settlement Class, you may also object to the proposed Settlement by following the instructions from the Court (available on the website) by **March 6, 2024**. If you stay in the Settlement Class, you will be bound by all orders and judgments of the Court, and you will not be able to sue, or continue to sue, the Diamondback Entities or others identified in the Settlement Agreement from claims described herein. You may appear through an attorney if you so desire.

**What are my other options?** If you do not wish to participate in or be legally bound by the proposed Settlement, you may exclude yourself by opting out no later than **March 6, 2024**, by following the instructions from the Court (available on the website). If you opt out, you will not receive any benefits from the Settlement and will not be bound by it or the judgment in this case.

**When will the Court decide whether to approve the proposed Settlement?** A Final Fairness Hearing has been scheduled for **March 27, 2024**, at 3:00 p.m. CT at the United States District Court for the Western District of Oklahoma, 200 NW 4th Street, Oklahoma City, OK 73102, Courtroom 301. You are not required to attend the hearing, but you or your lawyer may do so if you wish.

 **THIS IS ONLY A SUMMARY. TO GET A COPY OF THE LONG-FORM NOTICE OR FOR MORE INFORMATION, VISIT WWW.COOK-DIAMONDBACK.COM OR CALL TOLL-FREE 1-877-595-0197.**

# Exhibit B

6B    Thursday, January 25, 2024                    BUSINESS                    dallasnews.com    The Dallas Morning News



File Photo/The Associated Press

**A Federal Aviation Administration investigation** of a Delta Air Lines jet that lost a nose tire while taxiing at the Atlanta airport over the weekend is another in a series of issues involving Boeing airplanes.

AVIATION

# Boeing 757 lost nose wheel as it prepared for takeoff

### Delta Air Lines incident comes during rough stretch for plane maker

THE ASSOCIATED PRESS

A Boeing 757 jet operated by Delta Air Lines lost a nose wheel while preparing for takeoff from Atlanta.

It was an older model of plane than those made by Boeing that have raised safety concerns about the company, yet it occurred within an intense spotlight on one of the nation's top manufacturers.

Delta Flight 982 — headed to Bogota, Colombia — was taxiing for departure at Hartsfield-Jackson Atlanta International Airport when the incident took place around 11:15 a.m. Saturday, according to the Federal Aviation Administration, which is investigating the incident.

The plane is 32 years old.

"All customers and their bags were removed from the aircraft, transferred to the gate and onto a replacement aircraft," Delta said. "We apologize to our customers for the inconvenience."

No one was injured, a Delta spokesperson told The Associated Press — adding that the plane's tire was replaced and it went back into service the next day.

According to the Atlanta-based airline, 172 passengers, two pilots and four flight attendants were on board the flight.

When contacted by The AP Wednesday, Boeing did not comment further. The Arlington, Va., aircraft maker ended production of the 757 nearly 20 years ago.

There have been a string of mishaps involving Boeing planes over recent years — including two crashes of Max 8 planes in Indonesia and Ethiopia, which killed a total of 346 people in 2018 and 2019.

Earlier this month, a door plug blew off an Alaska Boeing 737 Max 9 jetliner 16,000 feet above Oregon, leaving a gaping hole in the side of the plane. Since then, Alaska Airlines and United reported finding loose bolts and other problems in the panel doors of an unspecified number of other Max 9s.

Boeing CEO Dave Calhoun was in Washington, D.C., on Wednesday to meet with lawmakers about the safety of the Max 9.

Ongoing investigations from regulators and harsh criticism of Boeing inside and outside of the air travel industry preceded Calhoun's visit to Washington on Wednesday.

OIL AND GAS

# Exxon sues to block climate proposal

### Legal action against shareholders marks aggressive pushback

By KEVIN CROWLEY
Bloomberg News

Texas oil giant Exxon Mobil Corp. is suing U.S. and Dutch climate activist investors in an effort to remove what it describes as their "extreme agenda" from the ballot at its annual shareholder meeting.

The company is seeking a declaratory judgment from U.S. District Court in Fort Worth to exclude from its annual meeting this year a proposal to accelerate greenhouse-gas emission cuts submitted by Arjuna Capital LLC and the Amsterdam-based nonprofit group Follow This.

Exxon argues that a judgment in its favor would tighten the Securities and Exchange Commission's interpretation of the rules around what proposals get on proxy ballots across corporate America.

Publicly traded companies typically debate the merits of individual proposals with the SEC, which can advise whether they be excluded from the ballot. But critics of the process, including Exxon, allege the SEC's advice can vary widely depending on which administration is in office. The number of environmental and social proposals voted on has more than doubled over the past two proxy seasons, according to the SEC.

Follow This and Arjuna Capital have "become shareholders solely to campaign for change through shareholder proposals that are calculated to diminish the company's existing business," Exxon said in the complaint. They "are aided in their efforts by a flawed shareholder proposal and proxy voting process that does not serve investors' interests and has become ripe for abuse."

## 'Remarkable step'

Exxon's decision to seek legal judgment rather than go through the SEC is highly unusual and marks an aggressive pushback against climate activists who use shareholder voting to influence boardroom strategy. It also comes as the U.S. Supreme Court questions a longstanding legal doctrine known as the "Chevron doctrine" that gives federal agencies wide latitude to interpret unclear mandates from Congress.

The lawsuit is a "remarkable step," Follow This founder Mark van Baal said in a statement. "ExxonMobil clearly wants to prevent shareholders using their rights. Apparently, the board fears shareholders will vote in favor of emissions reduction targets," he said.

Arjuna did not respond to a request for comment outside of normal office hours.

Last month, Follow This and Arjuna submitted a proposal calling for a "further accelerating" of Exxon's emission reduction plans that include Scope 3 emissions, in other words the pollution from customers burning the company's oil and gas. CEO Darren Woods is a vocal critic of Scope 3 emissions accounting, saying it's misleading and doesn't capture overall emission-reduction efforts. A similar proposal last year gained just over 10% of shareholder support, down from 27% in 2022.

"The 2024 proposal does seek to improve ExxonMobil's economic performance or create shareholder value," the company said in the complaint. "Like the previous proposals, it is designed instead to serve Arjuna's and Follow This's agenda to "shrink" the very company in which they are investing."

## Previous proposals

Exxon is seeking to have the proposal excluded on two counts: that it interferes with the ordinary course of business, and that shareholders have rejected similar proposals multiple times. Exxon was one of the highest profile targets of the environmental, social and corporate governance (ESG) movement, losing a proxy battle against first-time activist Engine No. 1 in 2021, which forced it to replace a quarter of its board with new directors. Engine No. 1 isn't named in the complaint.

Exxon isn't seeking monetary relief from the activist investors.

Proposals by Amsterdam-based nonprofit Follow This and Massachusetts-based Arjuna Capital have become a fixture on the ballots of Big Oil's annual meetings, mostly encouraging oil majors to set greenhouse gas emission targets that align with the Paris climate agreement. While most proposals have been rejected, support steadily rose from 2015 through 2021 before dropping more recently.



# HAMMERLE FINLEY LAW FIRM

### Fierce Advocacy for Over 40 Years.
### Texas Civil Litigation, including

- Business Contracts
- Trusts
- Wills
- Real Estate
- Fiduciary Duty
- Guardianship
- Probate
- Injunctions
- Appeals
- Arbitration

## 469-909-1552

Virginia Hammerle, Board Certified in Civil Trial Law by the Texas Board of Legal Specialization, Hammerle Finley

2871 Lake Vista Dr., Suite 100, Lewisville, Texas 75067

LEGAL NOTICE

**If You Are or Were a Royalty Owner Paid by Diamondback E&P LLC, Diamondback Energy, Inc., and/or Energen Resources Corporation from a Texas Oil-and-Gas Well, You Could Be Part of a Proposed Class Action Settlement.**

The Settlement Class includes:

All royalty owners in Texas wells where Diamondback E&P LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from April 1, 2011, to July 31, 2023, under oil and gas leases which expressly contain the off-lease use of gas royalty clause, the on-lease free use clause, or both, and in which Diamondback E&P LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates are lessees or successors-in-interest under such agreements (collectively, the "Diamondback Entities").

Excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) agencies, departments or instrumentalities of the state of Texas; (3) the Diamondback Entities and their affiliates, officers, and directors; (4) any publicly traded entity (and its affiliates) that produces, gathers, processes, or markets gas; (5) the claims of royalty owners to the extent covered by arbitration clauses or prior settlement agreements, if any, still in effect on the date this lawsuit was filed; and (6) royalty paid by the Diamondback Entities only as a pass-through for other non-affiliated entities, except to the extent any claims are asserted against the Diamondback Entities that arise from such royalty paid.

Claim Period means checks or payments from April 1, 2011, to and including July 31, 2023, subject to the terms of the Settlement Agreement regarding Released Claims.

The Litigation seeks damages for alleged payment, underpayment, or nonpayment of royalties on the volumes of natural gas, natural gas liquids, and associated hydrocarbons produced during the Claim Period. The Diamondback Entities expressly deny all allegations of wrongdoing or liability with respect to the claims and allegations in the Litigation. The Court did not decide which side is right.

On January 2, 2024, the Court preliminarily approved a Settlement in which the Diamondback Entities have agreed to pay Eleven Million Nine Hundred Seventy-Five Thousand, Five Hundred and Eighty Dollars ($11,975,580.00) in cash (the "Gross Settlement Amount"). From the Gross Settlement Amount, the Court may deduct Plaintiff's Attorneys' Fees and Litigation Expenses, an Incentive Award, and Administration, Notice, and Distribution Costs, all terms as defined in the Settlement Agreement. The remainder (the "Net Settlement Amount") will be distributed to participating Class Members as provided in the Settlement Agreement. Complete information on the benefits of the Settlement, including information on distribution of benefits, can be found in the Settlement Agreement posted on the website listed below. In exchange, Settlement Class Members will release the Diamondback Entities and others identified in the Settlement Agreement as Released Parties from the claims described in the Settlement Agreement as Released Claims.

The attorneys and law firm who represent the Class as Plaintiff's Counsel are Rex A. Sharp and Scott B. Goodger of Sharp Law, LLP. You may hire your own attorney, if you wish. However, you will be responsible for that attorney's fees and expenses.

**What Are My Legal Rights?**

- **Do Nothing, Stay in the Class, and Receive Benefits of the Settlement:** If the Court approves the proposed Settlement, you or your successors, if eligible, will receive the benefits of the proposed Settlement.

- **Stay in the Settlement Class, but Object to All or Part of the Settlement:** You can file and serve a written objection to the Settlement and appear before the Court. Your written objection must contain the information described in Section 10 of the Settlement Agreement and in the Notice of Settlement, both of which can be found at the website listed below. Your objection must be filed with the Court and served on Plaintiff's Counsel and Diamondback's Counsel **no later than March 6, 2024, at 5 p.m. CT.**

- **Exclude Yourself from the Settlement Class:** To exclude yourself from the Settlement Class, you must submit a written request to be excluded. Your Request for Exclusion must contain the information described in Section 8 of the Settlement Agreement and in the Notice of Settlement, both of which can be found at the website listed below. Your Request for Exclusion must be received **no later than March 6, 2024, at 5 p.m. CT.** You cannot exclude yourself on the website, by telephone, or by email.

The Court will hold a Final Fairness Hearing on March 27, 2024, at 3:00 p.m. CT in Courtroom 301 at the United States District Court for the Western District of Oklahoma. At the Hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will also consider the application for Plaintiff's Attorneys' Fees and Litigation Expenses and other costs, including an Incentive Award. If comments or objections have been submitted in the manner required, the Court will consider them as well. Please note that the date of the Final Fairness Hearing is subject to change without further notice. If you plan to attend the Hearing, you should check with the Court and the website www.cook-diamondback.com to confirm no changes to the date and/or time of the Hearing have been made.

**This notice provides only a summary. For more detailed information regarding the rights and obligations of Class Members, read the Notice of Settlement, Settlement Agreement and other documents posted on the website or contact the Settlement Administrator.**

Visit: www.cook-diamondback.com
Call Toll-Free: 1-877-595-0197
Or write to: *Cook v. Diamondback Settlement*
c/o JND Legal Administration,
Settlement Administrator
P.O. Box 91231
Seattle, WA 98111
Email: info@cook-diamondback.com

www.cook-diamondback.com                    1-877-595-0197

## LEGAL NOTICES    HoustonChronicle.com/Place-Legals    legals@chron.com    713.362.6868

| Legals/Public Notices | Legals/Public Notices | Legals/Public Notices | Legal Bids & Proposals | Legal Bids & Proposals | Citation by Publication |

### LEGAL NOTICE

## If You Are or Were a Royalty Owner Paid by Diamondback E&P LLC, Diamondback Energy, Inc., and/or Energen Resources Corporation from a Texas Oil-and-Gas Well, You Could Be Part of a Proposed Class Action Settlement.

The Settlement Class includes:

All royalty owners in Texas wells where Diamondback E&P LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from April 1, 2011, to July 31, 2023, under oil and gas leases which expressly contain the off-lease use of gas royalty clause, the on-lease free use clause, or both, and in which Diamondback E&P LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates are lessees or successors-in-interest under such agreements (collectively, the "Diamondback Entities").

Excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) agencies, departments or instrumentalities of the State of Texas; (3) the Diamondback Entities and their affiliates, officers, and directors; (4) any publicly traded entity (and its affiliates) that produces, gathers, processes, or markets gas; (5) the claims of royalty owners to the extent covered by arbitration clauses or prior settlement agreements, if any, still in effect on the date this lawsuit was filed; and (6) royalty paid by the Diamondback Entities only as a pass-through for other non-affiliated entities, except to the extent any claims are asserted against the Diamondback Entities that arise from such royalty paid.

Claim Period means checks or payments from April 1, 2011, to and including July 31, 2023, subject to the terms of the Settlement Agreement regarding Released Claims.

The Litigation seeks damages for alleged payment, underpayment, or nonpayment of royalties on the volumes of natural gas, natural gas liquids, and associated hydrocarbons produced during the Claim Period. The Diamondback Entities expressly deny all allegations of wrongdoing or liability with respect to the claims and allegations in the Litigation. The Court did not decide which side is right.

On January 2, 2024, the Court preliminarily approved a Settlement in which the Diamondback Entities have agreed to pay Eleven Million Nine Hundred Seventy-Five Thousand, Five Hundred and Eighty Dollars ($11,975,580.00) in cash (the "Gross Settlement Amount"). From the Gross Settlement Amount, the Court may deduct Plaintiff's Attorneys' Fees and Litigation Expenses, an Incentive Award, and Administration, Notice, and Distribution Costs, all terms as defined in the Settlement Agreement. The remainder (the "Net Settlement Amount") will be distributed to participating Class Members as provided in the Settlement Agreement. Complete information on the benefits of the Settlement, including information on distribution of benefits, can be found in the Settlement Agreement posted on the website listed below. In exchange, Settlement Class Members will release the Diamondback Entities and others identified in the Settlement Agreement as Released Parties from the claims described in the Settlement Agreement as Released Claims.

### www.cook-diamondback.com                1-877-595-0197

The attorneys and law firm who represent the Class as Plaintiff's Counsel are Rex A. Sharp and Scott B. Goodger of Sharp Law, LLP. You may hire your own attorney, if you wish. However, you will be responsible for that attorney's fees and expenses.

### What Are My Legal Rights?

- **Do Nothing, Stay in the Class, and Receive Benefits of the Settlement:** If the Court approves the proposed Settlement, you or your successors, if eligible, will receive the benefits of the proposed Settlement.

- **Stay in the Settlement Class, but Object to All or Part of the Settlement:** You can file and serve a written objection to the Settlement and appear before the Court. Your written objection must contain the information described in Section 10 of the Settlement Agreement and in the Notice of Settlement, both of which can be found at the website listed below. Your objection must be filed with the Court and served on Plaintiff's Counsel and Diamondback's Counsel no later than **March 6, 2024, at 5 p.m. CT.**

- **Exclude Yourself from the Settlement Class:** To exclude yourself from the Settlement Class, you must submit a written request to be excluded. Your Request for Exclusion must contain the information described in Section 8 of the Settlement Agreement and in the Notice of Settlement, both of which can be found at the website listed below. Your Request for Exclusion must be received no later than **March 6, 2024, at 5 p.m. CT.** You cannot exclude yourself on the website, by telephone, or by email.

The Court will hold a Final Fairness Hearing on March 27, 2024, at 3:00 p.m. CT in Courtroom 301 at the United States District Court for the Western District of Oklahoma. At the Hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will also consider the application for Plaintiff's Attorneys' Fees and Litigation Expenses and other costs, including an Incentive Award. If comments or objections have been submitted in the manner required, the Court will consider them as well. Please note that the date of the Final Fairness Hearing is subject to change without further notice. If you plan to attend the Hearing, you should check with the Court and the website www.cook-diamondback.com to confirm no changes to the date and/or time of the Hearing have been made.

This notice provides only a summary. For more detailed information regarding the rights and obligations of Class Members, read the Notice of Settlement, Settlement Agreement and other documents posted on the website or contact the Settlement Administrator.

Visit: www.cook-diamondback.com
Call Toll-Free: 1-877-595-0197
Or write to: Cook v. Diamondback Settlement
c/o JND Legal Administration,
Settlement Administrator
P.O. Box 91231
Seattle, WA 98111
Email: info@cook-diamondback.com

### PUBLIC HEARING WITHOUT VARIANCE OR SPECIAL EXCEPTION (both Virtual Meeting and Face-to-Face Meeting) The Houston Planning Commission has received an application to allow the partial replatting of Rosewood Estates. This proposal includes the replatting Lot 232, of Rosewood Estates as recorded under Volume 23, Page 42, of the Map Records of Harris County, Texas for the purpose creating 2 lots. The new subdivision name is ROSEWOOD ESTATES SEC 2 PARTIAL REPLAT NO 6 This is the written notice of a public hearing the City send to all owners of property within 300' of the boundary of the proposed replat. The Houston Planning Commission will hold a public meeting and public hearing on this replat. The Commission is the non-legislative body authorized to review and render decisions on subdivision applications and requests. The meeting at which this item will first be considered is listed below. A sign with this information has also been posted on the property. PLANNING COMMISSION MEETING INFORMATION Thursday, February 22, 2024 beginning at 2:30 p.m. City Hall Annex Building, 900 Bagby Street City Council Chamber, Public Level, Houston, Texas. Members of the public may make comments or express concerns about the proposed project by either attending the meeting at City Council Chamber listed above or attending the meeting via Microsoft Teams. The Microsoft Teams meeting will allow for a two-way video/audio communication with the Houston Planning Commission. For instruction on how to join the meeting, interested persons are advised to check our website 72 hours prior to the Planning Commission meeting: www.houstonplanning.com or Call: 832-393-6624. You may submit comments to: Development.Services@houstontx.gov Contact the applicant at Nahom @ Here Ero Development (713) 470.9280. Or the City of Houston Planning Department at (832) 393-6600 for any additional information

**Public Notice**
January 25, 2024

Treasury American Rescue Plan Act (ARPA) State and Local Fiscal Recovery Fund (SLFRF)
Request for Proposals (RFP) for
Community Facilities Grant Program Investments
Capacity Building & Operating Expenses

Harris County Community Services Department (HCCSD) has released the Community Facilities and Infrastructure Investments Capacity Building & Operating Expenses (RFP) – on its webpage (https://csd.harriscountytx.gov/Pages/FundingOpportunities .aspx). The applications are available to all interested and eligible applicants, including non-profit organizations and governmental entities. These funds were provided by the U.S. Department of Treasury.

Estimated Total Funding Available is - $19,900,000.

Applications should be submitted by February 23, 2024 2pm CST to CSD BOX Platform (https://hccsd.app.box.com/f/86d23b23d695457ba158e0f8e34956) For alternative delivery methods contact CSD at rfp@csd.hctx.net at least 3 business days before the due date. Late applications will not be accepted.

Eligible projects are describe in detail on the CSD website (https://csd.harriscountyt x.gov/Pages/FundingOpportunities.aspx). Eligible projects include: renovation or construction of new physical infrastructure; acquisition of pre-existing facilities; and in-crease operational capacity for an existing program, that addresses barriers to the improvement or stabilization of the lives of county residents' such as food insecurity, housing insecurity and homelessness, domestic violence or sexual abuse, mental health, and behavioral health supports.

For more information on eligibility, application evaluation and selection criteria, and standards please visit the Funding Opportunities page link (https://csd.harriscountyt x.gov/Pages/FundingOpportunities.aspx). Applicants can also contact by email HCCSD Development staff for technical assistance. Deadlines to submit questions is February 19, 2024, by 5:00 PM CST. Q/A will be posted on HCCSD's website for the public. To request special accommodations, please contact the HCCSD Development staff at rfp@csd.hctx.net for assistance 3 business days before the application deadline.

An Applicant Conference will be held virtually on February 1, 2024. You may find the link to the meeting at https://csd.harriscountytx.gov/Pages/FundingOpportunities.a spx. Harris County will provide for reasonable accommodations for persons attending Harris County functions. Requests from persons needing special accommodations should be received by Harris County staff 48-hours prior to the function. To arrange for the Applicant Conference will be conducted in English and requests for language inter-preters or other special communication needs should be made at least 72 hours pri-or to a function. Please email rfp@csd.hctx.net for assistance or additional informa-tion about this posting.

COMPETITIVE SEALED PROPOSALS WILL BE RECEIVED BY PROCUREMENT SERVICES, PORT HOUSTON, UNTIL 11:00 A.M., ON FEBRUARY 7, 2024, FOR THE FOLLOWING:

(CSP-3050) INSTALLATION OF AUTO-MATIC TRANSFER SWITCH AT BAR-BOURS CUT AND BAYPORT CONTAIN-ER TERMINAL

NO PRE-PROPOSAL CONFERENCE WILL BE HELD FOR THIS PROCUREMENT.

RESPONDENTS MUST SUBMIT RE-SPONSES ELECTRONICALLY VIA EMAIL TO: PROCUREMENTRESPONSES@PORT HOUSTON.COM.

NOTE: PLEASE INCLUDE THE SOLIC-ITATION NUMBER AND THE PROJECT TITLE IN THE SUBJECT LINE.

SPECIFICATIONS MAY BE OBTAINED FROM PORT HOUSTON'S ePROCUREMENT WEBSITE: https://buys peed.porthouston.com.

### NOTICE OF SALE
FORT BEND COUNTY MUNICIPAL UTIL-
ITY DISTRICT NO. 169
(A political subdivision of the State of
Texas located within Fort Bend County)
$5,300,000
Unlimited Tax Bonds, Series 2024
"Not Qualified Tax-Exempt Obligations"

The Board of Directors of Fort Bend County Municipal Utility District No. 169 (the "District") will publicly receive sealed bids on up to $5,300,000 Unlim-ited Tax Bonds, Series 2024 (the "Bond s") on Monday, February 5, 2024, at 9:30 A.M., Houston Time, at the offices of the District's Financial Advisor, Mas-terson Advisors LLC, 3 Greenway Pla-za, Suite 1100, Houston, Texas 77046. At a Board of Directors meeting on Monday, February 5, 2024, at 10:30 A.M., Houston Time, at the offices of Al-len Boone Humphries Robinson LLP, 3200 Southwest Freeway, Suite 2600, Houston, Texas 77027, the Board will immediately take action to reject any and all bids or accept the bid resulting in the lowest net interest cost to the Dis-trict.

A bid for the Bonds may be delivered to the District electronically, by telephone or delivered directly to the District in a sealed envelope addressed to the "Pres-ident and Board of Directors, Fort Bend County Municipal Utility District No. 169" at the above address of Masterson Advisors LLC. All bidders must submit a signed "Official Bid Form" and a bank cashier's check in the amount of $106,000 payable to the order of "Fort Bend County Municipal Utility District No. 169" (with Houston Deposit). Addi-tional terms and conditions related to the submission of a bid for the Bonds are included in the "Official Notice of Sale."

The Bonds will mature serially on May 1, 2026 through 2049, and will be dated March 1, 2024. The "Official Notice of Sale," "Preliminary Official Statement," and "Official Bid Form" may be ob-tained from the District's Financial Advi-sor, Masterson Advisors LLC, 3 Green-way Plaza, Suite 1100, Houston, Texas 77046. This notice does not constitute an offer to sell the Bonds but is merely notice of sale of the Bonds as required by Texas law. The offer to sell the Bonds will be made only by means of the "Official Notice of Sale," "Preliminary Official Statement," and "Official Bid Form."

Mr. Arden J. Morley
President, Board of
Directors
Fort Bend County Munici-
pal Utility District No. 169
Fort Bend County, Texas

The Houston Food Bank is securing bids for "Stand Up Reach Lifts." Bids will be received until 5:00 PM on Thursday, January 8, 2024 and opened at 10:00AM on Friday, January 5, 2024 via Zoom. Invitation for Bid can be found at www.houstonfoodbank.org.

YES Prep Public Schools, open-enrollment charter schools, will be accepting proposals for NCE Parking Lot Addition (RFP#YESP2024-11) and Multi-Campus Architectural Canopy Installation (RFP#YESP2024-12). Responses must be received by 10:00 am on February 15th, 2024, through YES Prep's eBid system, and will be opened at that time and location at 5405 South Loop E Fwy Houston, Texas 77033. YES Prep reserves the right to reject any and/or all proposals or waive any or all irregular-ities. For further information, please contact Mehmet Bayar, Director of Procurement at mehmet.bayar@yesprep.o rg. Proposers may log in to view the bid package and submit their responses at http://www.yesprep.org/rfps

## WE DELIVER YOUR MESSAGE

HoustonChronicle.
com/Advertise

### VIEW LEGAL NOTICES AT
HoustonChronicle.com/Legals

### Legal Bids & Proposals

**Request for Proposal (RFP)**
Purchasing Cooperative of America (PCA) is a national public procurement cooperative working with a public agency to provide Proposals for response by Vendors who can provide the following Products/services to public sector entities: RFP 00-401-24 Waste Hauling Services, and Related Items; 2) RFP 00-402-24 Tactical Equipment, Technology, and Related Products for Law Enforcement Outfitting; 3) RFP 00-403-24 Custom Phup (CP) Rehabilitation for Vertical Sewer Structures. Vendors are invited to respond electronically to RFPs through the PCA website portal at www.pcamerica.org/solicitations. Proposals are due by 11:00 AM CT on Tuesday, February 20, 2024. Direct inquiries to Elaine Nichols, Director, at 844-722-6255.

### Citation by Publication

#### CITATION BY PUBLICATION – CIVIL
Cause Number: 23-08-10953
Clerk of the Court Attorney Requesting Service
Melisa Miller Troy Ford
P.O Box 2985
Conroe, Texas 77305
121 McKinney ST STE 4600
Houston TX 77010-2010
THE STATE OF TEXAS
NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney does not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of forty-two days after the date of issuance of this citation and petition, a default judgment may be taken against you."

To: Kellie Stanley Mendez

You are hereby commanded to appear by filing a written answer to the Original Petition for Bill of Review at or before 10:00 A.M. of the Monday next after the expiration of forty-two days after the date of issuance of this citation the same being Monday, the 5th day of February, 2024 before the 457th Judicial District Court of Montgomery County, Texas at the Courthouse of said County in Conroe, Texas. Said Original Petition for Bill of Review was filed in said court on this the 18th day of August, 2023, in this case, numbered 23-08-10953 on the docket of said court.

The names of the parties to the cause are as follows:
Lakeside Resort JV, LLC D/B/A Margaritaville Resort Lake Conroe are Plaintiffs and Kellie Stanley Mendez are Defendants

A brief statement of the nature of this suit is as follows, to wit:
The 457th Judicial District Court previously entered a Default Judgment in Cause No. 21-12-16463, Kellie Stanley Mendez v. Lakeside Resort JV, LLC d/b/a Margaritaville Resort Lake Conroe. This Bill of Review asserts that this Default Judgment should be set aside, as is more fully shown by Original Petition for Bill of Review on file in this suit.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due as the law directs. Issued and given under my hand and the Seal of said Court, at office in Conroe Texas, this on this the 29th day of December, 2023.

Melisa Miller, District Clerk
Montgomery County, Texas

By: _____
Delcy Phillips

### Citation by Publication

CAUSE NUMBER: 2023-31305

IN THE 125TH JUDICIAL DISTRICT COURT OF HARRIS COUNTY, TEXAS

Plaintiff: PENNYMAC LOAN SERVICES LLC (its successors in interest or assigns)

vs.

Defendant: MELISSA ZELAYA, CHRISTINA ZELAYA, LAURA INOCENCIA NUILA ZELAYA AND THE UNKNOWN HEIRS-AT-LAW OF CARLOS A ZELAYA DECEASED

### CITATION BY PUBLICATION

THE STATE OF TEXAS
COUNTY OF Harris

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file written answer with the clerk who issued this citation by 10:00am on Monday next following the expiration of forty-two days after the date of issuance of this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."

YOU ARE HEREBY COMMANDED to be and appear before the 125th Judicial District Court of Harris County, Texas in the Courthouse in the city of Houston, Texas at or before 10:00 o'clock A.M. Monday, the 5th day of February 2024, being the Monday next after the expiration date of forty-two days after this citation is issued, and you are hereby commanded and re-quired then and there to appear and file written answer to the PLAINTIFF'S ORIGINAL PETITION filed in said Court on the 19TH day of MAY 2023, in suit numbered 2023-31305 on docket of said court, wherein PENNYMAC LOAN SERVICES LLC is Plaintiff and MELISSA ZELAYA, CHRISTINA ZELAYA, LAURA INOCENCIA NUILA ZELAYA AND THE UNKNOWN HEIRS-AT-LAW OF CARLOS A ZELAYA DECEASED are the Defendant(s), the nature of plaintiff's demand and the said petition alleging:

PLAINTIFF PENNYMAC LOAN SERV-ICES, LLC ITS SUCCESSORS AND AS-SIGNS, BY AND THROUGH ITS ATTOR-NEY OF RECORD, THUY FRAZIER OF MCCARTHY & HOLTHUS LLP LESS WEST 15TH STREET SUITE 1060, PLA-NO, TEXAS 75075, BROUGHT SUIT IN REM ONLY AGAINST MELISSA ZELAYA, CHRISTINA ZELAYA, LAURA INOCENCIA NUILA ZELAYA AND THE UNKNOWN HEIRS-AT-LAW OF CARLOS OF ZELAYA DECEASED, AND ANY OTH-ER PERSON(S) CLAIMING ANY INTER-EST UNDER ANY OF DECEASED; TITLE,OR INTEREST THROUGH CAR-LOS A ZELAYA, AS HEIR(S)-AT-LAW TO 4939 EDGEGATE DR., SPRING TEXAS 77373 AND LEGALLY DESCRIB-ED TO WIT: LOT THREE (3) IN BLOCK ELEVEN (11) OF BIRNAM WOOD SEC-TION FIVE (5), A SUBDIVISION IN HAR-RIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF, RECORD-ED IN VOLUME 304, PAGE 110 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS

Notice hereof shall be given by publishing this Citation four consecutive weekly pre-vious to the 5TH day of FEBRUARY, 2024 in some newspaper published in the County of HARRIS, if there be a news-paper published therein, but if not, then the nearest county where a newspaper is published , and this Citation shall be re-turned on 5TH day of JANUARY, 2024 which is forty two days after the date it is issued, and the first publication shall be at least twenty eight days before said re-turn day.

HEREIN FAIL NOT, but have before said court on said return day this Writ with your return thereon, showing how you have executed same.

WITNESS: MARILYN BURGESS, District Clerk, Harris County, Texas

GIVEN UNDER MY HAND AND SEAL OF SAID COURT at Houston, Texas this 18TH day of DECEMBER, 2023.

(SEAL)

MARILYN BURGESS
District Clerk
Harris County, Texas
201 CAROLINE
Houston, Texas 77002
PO Box 4651
Houston, Texas 77210

By: /s/ Bernitta Barrett
BERNITTA BARRETT Deputy District
Clerk

Newspaper:
HOUSTON CHRONICLE

Issued at the request of:
THUY FRAZIER
Address: 1255 West 15th Street, Suite 1060
Plano, TX 75075
Bar Number: 24088129
Tel. Number: (214) 291-3809

### Notice to Creditors

No. 519704    IN COUNTY COURT AT LAW
IN RE ESTATE OF
CAROLYN ESTELLE BARRY,    NO. 3
DECEASED    HARRIS COUNTY, TEXAS
NOTICE TO CREDITORS
Notice is hereby given that original Letters Testamentary for the Estate of Carolyn Estelle Barry, Deceased, were issued on September 18, 2023, in Cause No. 519704, pending in the County Court-At-Law No. 3, Harris County, Texas, to: John Ermel.

All persons having claims against this Estate which is currently being administered are required to present them to the undersigned within the time and in the manner prescribed by law.

c/o: Representative, Estate of Carolyn Estelle Barry
5430 Fagewood Lane
Houston, Texas 77056
DATED the 27 day of 2023, 2023.

/s/ Nicky Nixon Daughtrey Jr.
Nicky Nixon Daughtrey Jr.
Attorney for John Ermel
State Bar No.: 24029503
2525 Robinhood Street
Houston, Texas 77005
Telephone: (713) 669-1498
Facsimile: (832) 565-1366
E-mail: njw@njwdlaw.com

### Notice to Creditors

NOTICE TO CREDITORS
Notice is hereby given that original Letters Testamentary for the Estate of Doyal Eldon Perry, Deceased, were issued on January 23, 2024, in Cause No. 520797, pending in Probate Court No. 1. Harris County, Texas, to: Suzanne Perry.

All persons having claims against this Estate which is currently being administered are required to present them to the undersigned within the time and in the manner prescribed by law.

c/o: Steven C. Earl
Stilwell, Earl & Apostolakis, LLP
128 Vision Park Blvd, Suite 140
Shenandoah, Texas 77384

DATED January 24, 2024.

By: /s/Steven C. Earl
Steven C. Earl
State Bar No. 240020
128 Vision Park Blvd, Suite 140
Shenandoah, Texas 77384
Telephone: (281) 419-6200
Facsimile: (281) 419-0250
www.woodlandslawfirm.com

### Notice to Creditors



## NOTICE TO CREDITORS AD
# $106.00*

Contact our team: legals@chron.com
OR
Visit our 24/7 website to place anytime:
HoustonChronicle.com/Place-Legals
(select Citations)

*Includes first 36 lines and
1 Affidavit of Publication.
$2.00 each additional line.

## We'll tell your neighbors how great you are.

Our product enables businesses to reach their communities with ease.

Place a **digital ad** today.
HoustonChronicle.com/Advertise



HoustonChronicle.com/Obits

HoustonChronicle.com

# Jail site

Continued from Page 1A

accommodate a design that architects and the jail's staff prefer – would not be a workable location.

Jail operator Oklahoma County Criminal Justice Authority and designers REES and HOK would prefer a location large enough to allow for a single-story jail to be built.

Two options were before commissioners Wednesday – one brought forward by Brian Maughan proposing to remove Stockyards City land from consideration as a jail site, and one brought forward by Myles Davidson proposing to pursue negotiations to buy the Grand Boulevard land.

After an executive session lasting about two hours, the commissioners voted to recess their meeting until later the same day, choosing to send Davidson to meet with Oklahoma City officials with questions about what locations the city might be willing to appropriately zone for a new jail – if any.

## Could the new jail be located downtown? Yes.

Curt Pardee, a principal with HOK, discussed challenges associated with building a new jail downtown with bond oversight board members Tuesday. Farooq Karim, the director of design with REES, gave commissioners the same information when they met Wednesday.

They said only about 10 acres immediately to the north of the jail's existing 8-acre site is immediately available to be purchased. Oklahoma County also would need to acquire land between the jail and Classen Boulevard to make room for future growth.

They said a jail with 1,800 beds built north of the existing building downtown would:

● Take longer to build because of a lack of laydown space for construction materials, because of risks tearing the old building down would pose to the new building and because of time and costs it might take to acquire the needed land. "The existing site already is completely used. It would just make it more difficult to work around," Pardee said.

● Be at least four stories in height with two tiers on each level and require multiple elevators, something Oklahoma County would prefer to avoid. "Elevators have been a big concern for the county," Pardee said.

● Need a deep foundation because of poor soil, adding more expense to the project. "If this is a $300 million project, it could add $30 million in costs and likely more. It is something to consider," Pardee said.

● Restrict opportunities to use natural lighting. "it is important as we are talking about how to best treat those who are receiving behavioral health care that they receive the most natural light as possible," he said.

● Require the closing of a portion of Robert S. Kerr Avenue. "It would take some time to do that," Pardee said.

● Lack needed room to muster inmates if the main building had to be evacuated for some reason.

● Make it more difficult to keep a behavioral health center for both detainees and other, non-arrested patients proposed as part of the new project (and being paid for by federal American Rescue Plan Act dollars) physically outside of the secure building. "You don't want a behavioral health center inside of the jail," Pardee said.

● Jeopardize the use of the federal funds, which must be allocated by the end of 2024 for a project that must be opened by the end of 2026. "We have to move forward so we can meet those deadlines," Pardee said.

"Those are issues with the existing site and why we feel like it makes a lot of sense for the county to look elsewhere," said Pardee.

Pardee and Karim also showed the board and commissioners potential design layouts HOK could pursue on a large, relatively flat piece of property that would allow for separate public entrances for the behavioral health center and jail, plus showed them renderings of what Oklahoma County's new jail could look like from the outside.

"It is important to understand jails today are different than they were 30 or 40 years ago," Eddy said.

Community activist Jess Eddy, a proponent of building the new jail downtown, called the presentation a "hatchet job" designed to deter commissioners from following their best option, given a new jail there would remain close to the courthouse, a large police presence and numerous social service groups that work with detainees after they are released from the building.

"The downtown location was not supported with the advantages. The last time I spoke with Bob Ravitz, he said downtown is the only way to go," Eddy said.

> "It is important to understand jails today are different than they were 30 or 40 years ago."
>
> Curt Pardee
> A principal with architecture firm HOK

## Commissioners' meeting prompts renewed concerns from Del City

After holding a community forum at its city hall on Tuesday, various elected and appointed leaders representing Del City addressed commissioners Wednesday to voice their continued opposition to having a jail built just outside of their community.

Previously, the community has presented various reasons why Del City opposes placing a new jail at 1901 E Grand Boulevard.

Loyd A. Berger, Del City's police chief, issued a release Tuesday stating he believed a jail there would "decimate the economic development of this city, facilitate a sharp increase of the homeless population in the vicinity, and put a strain on city resources that would be financially unsustainable for a city of our size.

"As the police department, our primary goal is to ensure the safety of our citizens who reside here. Let's be clear, this proposed location would cause a potentially unprecedented threat on the public safety of our residents," Berger said.

On Wednesday, various Del City council members, members of the Midwest City-Del City board of education, that school district's superintendent and numerous area residents addressed commissioners to share the same concerns.

Kyle Gandy said a jail on Grand Boulevard would be about 1,500 feet from where his 98-year-old grandmother lives.

"Every time I have a conversation with her she is crying, wondering what this is going to do to her community," Gandy said. "This is something that would destroy our community."

Del City Councilwoman Claudia Browne told those who attended the forum she felt like the commissioners were pitting one part of Oklahoma County against another if it moved forward to approve both items before commissioners Wednesday.

"Is it because we are poor, or you don't like us? Because we are all brown? I don't want to fight the Stockyards, but it seems to me cattle are more important than us," she told them.

Oklahoma State Rep. Andy Fugate, D-Oklahoma City, told commissioners Oklahoma City has neglected areas in its community outside of Del City's city limits for decades.

"Our signature improvement from Oklahoma City is what we call trash mountain, at SE 59 and Bryant. While other parts of Oklahoma City have flourished, we have been abandoned," Fugate said. "Today, we are here once again, like it's Groundhog Day."

Fugate said Oklahoma City's closest police station is miles away from the Grand Boulevard site, compared to one being right next door to the current jail site, and said that while there are schools close to the current jail, that's not the same.

"Those kids don't walk to school. Ours do," Fugate said.

Price, Fugate told commissioners, should not be the driving factor behind the county's decision.

"Preying on a tiny community is simply wrong. It's always wrong," Fugate said.

## Why is time important in building a new county jail?

Stacey Trumbo, Oklahoma County's engineer, told board members construction costs in Oklahoma climbed 23% in 2023, according to an engineering periodical that tracks that data.

Jeff Bradley, global director of HOK's Justice practice, agreed, telling board members: "It's millions of dollars every month" while the hunt for a jail location by Oklahoma County continues.

The Citizens Oversight Bond Advisory Board, with Pat McCoy absent, unanimously supported member Sandria Thompson's motion to urge Oklahoma County's Board of County Commissioners to decide where to build the new jail soon.

"It's not like we can tell them what to do, but if it is helpful that we line out we do concur with what we have been told about some of the challenges the current timeline poses," he said.

Thompson said that without selecting a site, pricing and schedule won't be firmed up, so making a decision soon could help control costs.

"We have given our recommendations for locations, and they have a challenging decision to make there," he said. "We need to give them affirmation that we are at the point where we need to try to control costs and not lose access to the ARPA funds."

# Lucas get the all-clear after collision with bull

**Murray Evans**
The Oklahoman
USA TODAY NETWORK

Nearly six months after being run over by a bull on his western Oklahoma ranch, U.S. Rep. Frank Lucas was released Wednesday from a doctor's care for the injuries he suffered in the incident.

During a mid-morning interview with The Oklahoman in his southwest Oklahoma City office, Lucas said he was headed to see his surgeon and that during the appointment, he hoped to receive the all-clear. That's exactly what happened, one of his aides confirmed.

Lucas, 64, said he'll likely always have screws in his body to anchor the damaged bones and will develop some arthritis as a result of his injuries. But he said he's grateful to be able to fully resume his duties – both in Congress and in Cheyenne, where he and his wife, Lynda, operate a ranch and farm.

"There's nothing like a six- or seven-inch screw in one direction and a four in the other to kind of pull things back together," he said. "I still know that my career as a bullfighter lasted three seconds. When I get out of that plane seat, either going to D.C. or coming back from D.C., I feel it, because sitting static for three hours kind of tightens me up a little bit. But I get loosened up."

Lucas, a Republican who's the dean of Oklahoma's seven-person congressional delegation, has continued ranching since taking office in 1994 – he believes he's the only active farmer in Congress – and has been injured at least three times. In 1996, a cow kicked a gate into his face and broke Lucas' nose. Lucas and a heifer butted heads in 2003, costing Lucas a tooth and resulting in emergency root canal surgery.

On Aug. 4, Lucas planned to take a stray bull to a nearby sale and give the proceeds to Roger Mills County, where his ranch is located. But as Lucas tried to load the bull, the animal escaped the trailer before Lucas could close a gate. In a chute only three feet wide, Lucas had nowhere to escape to avoid the charging bull, which hit him head on.

The impact spun Lucas around, and



**Oklahoma U.S. Rep. Frank Lucas discusses his recovery Wednesday in his office near Yukon.**
DOUG HOKE/THE OKLAHOMAN

the bull's hindquarters then drove Lucas's right femur into the ball socket and broke his pelvis in several places. Lucas is grateful his femur didn't also break.

His wife took Lucas to an emergency room and he was flown to OU Health University of Oklahoma Medical Center in Oklahoma City, where doctors inserted "extremely long screws" at different angles. For the next seven weeks, Lucas was unable to put any weight on his right side.

"I'm really quite fortunate, because farming is a physically dangerous business," Lucas said. "If my 1,000-pound stray bull had been an inch one way or the other, or put his head down, the special election would already be over by now."

On a serious note, Lucas said he's "thankful that there are such things as air-evac ambulances. I was happy that my friends at OU have a wonderful trauma hospital. I am very fortunate."

By late September, Lucas was back at work in Congress, albeit gingerly. He's gradually worked his way into a more normal routine since then, although there still are occasional issues. He said Wednesday he has remember to walk in a straight line.

"I'll just wind up with the classic arthritis that everybody has, where those cracks repaired themselves," he said. "I've got to keep moving. Advil and Tylenol will be my friend for many years to come. If that's the biggest challenge I face, I'm right there along with the rest of my constituents."

---

**LEGAL NOTICE**

**If You Are or Were a Royalty Owner Paid by Diamondback E&P LLC, Diamondback Energy, Inc., and/or Energen Resources Corporation from a Texas Oil-and-Gas Well, You Could Be Part of a Proposed Class Action Settlement.**

The Settlement Class includes:

All royalty owners in Texas wells where Diamondback E&P LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/ or each's respective affiliates was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from April 1, 2011, to July 31, 2023, under oil and gas leases which expressly contain the off-lease use of gas royalty clause, the on-lease free use clause, or both, and in which Diamondback E&P LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates are lessees or successors-in-interest under such agreements (collectively, the "Diamondback Entities").

Excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) agencies, departments or instrumentalities of the State of Texas; (3) the Diamondback Entities and their affiliates, officers, and directors; (4) any publicly traded entity (and its affiliates) that produces, gathers, processes, or markets gas; (5) the claims of royalty owners to the extent covered by arbitration clauses or prior settlement agreements, if any, still in effect on the date this lawsuit was filed; and (6) royalty paid by the Diamondback Entities only as a pass-through for other non-affiliated entities, except to the extent any claims are asserted against the Diamondback Entities that arise from such royalty paid.

Claim Period means checks or payments from April 1, 2011, to and including July 31, 2023, subject to the terms of the Settlement Agreement regarding Released Claims.

The Litigation seeks damages for alleged payment, underpayment, or nonpayment of royalties on the volumes of natural gas, natural gas liquids, and associated hydrocarbons produced during the Claim Period. The Diamondback Entities expressly deny all allegations of wrongdoing or liability with respect to the claims and allegations in the Litigation. The Court did not decide which side is right.

On January 2, 2024, the Court preliminarily approved a Settlement in which the Diamondback Entities have agreed to pay Eleven Million Nine Hundred Seventy-Five Thousand, Five Hundred and Eighty Dollars ($11,975,580.00) in cash (the "Gross Settlement Amount"). From the Gross Settlement Amount, the Court may deduct Plaintiff's Attorneys' Fees and Litigation Expenses, an Incentive Award, and Administration, Notice, and Distribution Costs, all terms as defined in the Settlement Agreement. The remainder (the "Net Settlement Amount") will be distributed to participating Class Members as provided in the Settlement Agreement. Complete information on the benefits of the Settlement, including information on distribution of benefits, can be found in the Settlement Agreement posted on the website listed below. In exchange, Settlement Class Members will release the Diamondback Entities and others identified in the Settlement Agreement as Released Parties from the claims described in the Settlement Agreement as Released Claims.

The attorneys and law firm who represent the Class as Plaintiff's Counsel are Rex A. Sharp and Scott B. Goodger of Sharp Law, LLP. You may hire your own attorney, if you wish. However, you will be responsible for that attorney's fees and expenses.

**What Are My Legal Rights?**

● **Do Nothing, Stay in the Class, and Receive Benefits of the Settlement:** If the Court approves the proposed Settlement, you or your successors, if eligible, will receive the benefits of the proposed Settlement.

● **Stay in the Settlement Class, but Object to All or Part of the Settlement:** You can file and serve a written objection to the Settlement and appear before the Court. Your written objection must contain the information described in Section 10 of the Settlement Agreement and in the Notice of Settlement, both of which can be found at the website listed below. Your objection must be filed with the Court and served on Plaintiff's Counsel and Diamondback's Counsel **no later than March 6, 2024, at 5 p.m. CT**.

● **Exclude Yourself from the Settlement Class:** To exclude yourself from the Settlement Class, you must submit a written request to be excluded. Your Request for Exclusion must contain the information described in Section 8 of the Settlement Agreement and in the Notice of Settlement, both of which can be found at the website listed below. Your Request for Exclusion must be received **no later than March 6, 2024, at 5 p.m. CT**. You cannot exclude yourself on the website, by telephone, or by email.

The Court will hold a Final Fairness Hearing on March 27, 2024, at 3:00 p.m. CT in Courtroom 301 at the United States District Court for the Western District of Oklahoma. At the Hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will also consider the application for Plaintiff's Attorneys' Fees and Litigation Expenses and other costs, including an Incentive Award. If comments or objections have been submitted in the manner required, the Court will consider them as well. Please note that the date of the Final Fairness Hearing is subject to change without further notice. If you plan to attend the Hearing, you should check with the Court and the website www.cook-diamondback.com to confirm no changes to the date and/or time of the Hearing have been made.

**This notice provides only a summary. For more detailed information regarding the rights and obligations of Class Members, read the Notice of Settlement, Settlement Agreement and other documents posted on the website or contact the Settlement Administrator.**

Visit: www.cook-diamondback.com
Call Toll-Free: 1-877-595-0197
Or write to: *Cook v. Diamondback Settlement*
c/o JND Legal Administration,
Settlement Administrator
P.O. Box 91231
Seattle, WA 98111
Email: info@cook-diamondback.com

www.cook-diamondback.com                                    1-877-595-0197

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| COOK CHILDREN'S HEALTH FOUNDATION a/k/a W.I. COOK FOUNDATION, INC., on behalf of itself and a class of similarly situated persons,<br><br>     Plaintiff,<br><br>vs.<br><br>DIAMONDBACK E&P LLC,<br><br>     Defendant. | Case No. CIV-21-359-D |

**NOTICE OF PROPOSED SETTLEMENT,
MOTION FOR ATTORNEYS' FEES AND COSTS,
INCENTIVE AWARD, AND FAIRNESS HEARING**

*A court authorized this Notice.  This is not a solicitation from a lawyer.*

> ***If you belong to the Settlement Class and this Settlement is approved,
> your legal rights will be affected.***
> Read this Notice carefully to see what your rights are in connection with this Settlement.

Because you may be a member of the Settlement Class in the Litigation captioned above and described below (the "Litigation"), the Court has directed this Notice to be provided for you.  The records of Diamondback E&P, LLC, Diamondback Energy, Inc., and/or Energen Resources Corporation and/or each's respective affiliates, lessees, or successors-in-interest under oil and gas leases, and their respective predecessors, successors, assigns, and their past, present and future officers, directors, affiliates, employees, agents, servants, and representatives, excluding, however, QEP Resources, Inc. (collectively, the "Diamondback Entities") show you are a royalty owner in Texas well(s) for which the Diamondback Entities remitted oil-and-gas royalties.  Capitalized terms not otherwise defined in this Notice shall have the meanings attributed to those terms in the Settlement Agreement referred to below and available for free at www.cook-diamondback.com.[1]

---

[1]    This Notice is a summary of the terms of the Settlement Agreement in this matter. Please refer to the Settlement Agreement for a complete description of the terms and

This Notice generally explains the claims being asserted in the Litigation, summarizes the Settlement, and tells you about your rights to remain a Class Member or to timely and properly submit a Request for Exclusion (also known as an "opt out") so that you will be excluded from the Settlement. This Notice provides information so you can decide what action you want to take with respect to the Settlement before the Court is asked to finally approve it. If the Court approves the Settlement and after the final resolution of any objections or appeals, the Court-appointed Settlement Administrator will issue payments to Settlement Class Members, without any further action from you. This Notice describes the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Settlement Class in the Litigation consists of the following individuals and entities:

> All royalty owners in Texas wells where Diamondback E&P LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from April 1, 2011, to July 31, 2023, under oil and gas leases which expressly contain the off-lease use of gas royalty clause, the on-lease free use clause, or both, and in which Diamondback E&P LLC, Diamondback Energy, Inc., Energen Resources Corporation, and/or each's respective affiliates are lessees or successors-in-interest under such agreements (collectively, the "Diamondback Entities").

> Excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) agencies, departments or instrumentalities of the State of Texas; (3) the Diamondback Entities and their affiliates, officers, and directors; (4) any publicly traded entity (and its affiliates) that produces, gathers, processes, or markets gas; (5) the claims of royalty owners to the extent covered by arbitration clauses or prior settlement agreements, if any, still in effect on the date this lawsuit was filed; and (6) royalty paid by the Diamondback Entities only as a pass-through for other non-affiliated entities, except to the extent any claims are asserted against the Diamondback Entities that arise from such royalty paid.

_____

provisions thereof. The terms, conditions, and definitions in the Settlement Agreement qualify this Notice in its entirety.

Questions? Visit www.cook-diamondback.com or call toll-free at 1-877-595-0197

Claim Period means checks or payments from April 1, 2011, to and including July 31, 2023, subject to the terms of the Settlement Agreement regarding Released Claims. If you are unsure whether you are included in the Settlement Class, you may contact the Settlement Administrator at:

*Cook v. Diamondback Settlement*
c/o JND Legal Administration, Settlement Administrator
P.O. Box 91231
Seattle, WA 98111
**Call Toll-Free:** 1-877-595-0197
**Email**: info@cook-diamondback.com

**TO OBTAIN THE BENEFITS OF THIS PROPOSED SETTLEMENT, YOU DO NOT HAVE TO DO ANYTHING.**

### I.        General Information About the Litigation

The Litigation seeks damages for the Diamondback Entities' alleged payment, underpayment, or nonpayment of royalties paid to Plaintiff and the Settlement Class or its predecessors on the volumes of natural gas, natural gas liquids, and associated hydrocarbons produced during the Claim Period. The Diamondback Entities expressly deny all allegations of wrongdoing or liability with respect to the claims and allegations in the Litigation. The Court has made no determination with respect to the merits of any of the parties' claims or defenses. A more complete description of the Litigation, its status, and the rulings made in the Litigation are available in the pleadings and other papers maintained by the United States District Court for the Western District of Oklahoma in the file for the Litigation.

### II.       The Settlement, Plaintiff's Attorneys' Fees, Litigation Expenses, Administration, Notice, and Distribution Costs, an Incentive Award, and the Settlement Allocation and Distribution to the Settlement Class

On January 2, 2024, the Court preliminarily approved a Settlement in the Litigation between Plaintiff, on behalf of itself and the Settlement Class, and the Diamondback Entities. This approval and this Notice are not an expression of opinion by the Court as to the merits of any of the claims or defenses asserted by any of the parties to the Litigation, or of whether the Court will ultimately approve the Settlement Agreement.

In settlement of the Litigation, the Diamondback Entities have agreed to pay Eleven Million Nine Hundred Seventy-Five Thousand, Five Hundred and Eighty Dollars ($11,975,580.00) in cash ("Gross Settlement Amount"). In exchange for the payment of the Gross Settlement Amount and other considerations stated in the Settlement Agreement, the Settlement Class shall release the Released Claims against the Released Parties. The

Questions? Visit www.cook-diamondback.com or call toll-free at 1-877-595-0197

3

Gross Settlement Amount, less Plaintiff's Attorneys' Fees and Litigation Expenses and Administration, Notice, and Distribution Costs, and other costs approved by the Court, including an Incentive Award to the named Plaintiff (the "Net Settlement Amount"), will be distributed to Settlement Class Members pursuant to the terms of the Settlement Agreement.

Class Counsel intends to seek an award of Attorneys' Fees of not more than 40% of the Gross Settlement Amount. Class Counsel have been litigating this case since 2021 without any payment whatsoever, advancing significant funds in expenses. At the Final Fairness Hearing, Class Counsel will also seek reimbursement of the litigation and administration expenses incurred in connection with the prosecution of this Litigation and that will be incurred through final distribution of the Settlement, which is estimated to be approximately $250,000. In addition, Plaintiff intends to seek an Incentive Award for its representation of the Class, specifically Plaintiff's time, expense, risk and burden in serving as Class Representative, which amount will not exceed 1% of the Gross Settlement Amount.

The Court must approve the Allocation Methodology, which describes how the Net Settlement Fund will be allocated to Settlement Class Members. The Settlement Administrator will distribute the benefits of the Net Settlement Fund after the Effective Date of the Settlement. The Effective Date requires the exhaustion of any appeals, which may take a year or more after the entry of Judgment. The Settlement may be terminated on several grounds, including if the Court does not approve, or materially modifies, the terms of the Settlement. If the Settlement is terminated, the Litigation will proceed as if the Settlement had not been reached.

This Notice does not and cannot set out all the terms of the Settlement Agreement, which is available for review at www.cook-diamondback.com. This website will eventually include this Notice, the proposed Allocation Methodology, and Class Counsel's application for Attorneys' Fees and Litigation Expenses, Administration, Notice, and Distribution Costs, and any other costs awarded by the Court. You may also receive information about the progress of the Settlement by visiting the website, or by contacting the Settlement Administrator at the address set forth above.

## III.    Class Settlement Fairness Hearing

The Final Fairness Hearing will be held on March 27, 2024, beginning at 3 p.m., before the Honorable Timothy D. DeGiusti, U.S. District Judge for the Western District of Oklahoma, 200 NW 4th Street, Oklahoma City, OK 73102, Courtroom 301. Please note that the date of the Fairness Hearing is subject to change without further notice. You should check the website at www.cook-diamondback.com to confirm no change to the date and time of the hearing. At the Final Fairness Hearing, the Court will consider: (a) whether the Settlement is fair, reasonable, and adequate; (b) any timely and properly raised objections

Questions? Visit www.cook-diamondback.com or call toll-free at 1-877-595-0197

4

to the Settlement; (c) the Allocation Methodology; (d) the application for Attorneys' Fees and Litigation Expenses and Administration, Notice, and Distribution Costs; and (e) the application for an Incentive Award for the Class Representative.

**A CLASS MEMBER WHO WISHES TO PARTICIPATE IN THE SETTLEMENT AND DOES NOT SUBMIT A VALID REQUEST FOR EXCLUSION DOES NOT NEED TO APPEAR AT THE FINAL FAIRNESS HEARING OR TAKE ANY OTHER ACTION TO PARTICIPATE IN THE SETTLEMENT.**

## IV.    What Are Your Options as a Class Member?

### A.    You Can Participate in the Settlement by Doing Nothing

By taking no action, your interests will be represented by Plaintiff as the Class Representative and Class Counsel.  As a Settlement Class Member, you will be bound by the outcome of the Settlement, if finally approved by the Court.  The Class Representative and Class Counsel believe that the Settlement is in the best interest of the Class, and, therefore, they intend to support the proposed Settlement at the Final Fairness Hearing.  As a Settlement Class Member, if you are entitled to a distribution pursuant to the Allocation Methodology and Final Distribution Schedule, you will receive your portion of the Net Settlement Amount, and you will be bound by the Settlement Agreement and all orders and judgments entered by the Court regarding the Settlement.  If the Settlement is approved, unless you exclude yourself from the Settlement Class, neither you nor any other Releasing Party will be able to start a lawsuit or arbitration, continue a lawsuit or arbitration, or be part of any other lawsuit against any of the Released Parties based on any of the Released Claims.

### B.    You May Submit a Request for Exclusion to Opt Out of the Settlement Class

If you do not wish to be a member of the Settlement Class, then you must exclude yourself from the Settlement Class by complying with the requirements set forth in Section 8 of the Settlement Agreement and summarized here.  All Requests for Exclusion must include: (a) the Class Member's name, address, telephone number, and notarized signature; (b) a statement that the Class Member wishes to be excluded from the Settlement Class in *Cook Children's Health Foundation a/k/a W.I. Cook Foundation, Inc., et al. v. Diamondback E&P LLC*; and (c) a description of the Class Member's interest in any wells for which  the  Diamondback Entities remitted oil-and-gas proceeds, including the well name, well number, county in which the well is located, and the owner identification number.  Requests for Exclusion may not be submitted through the website or by telephone, facsimile or e-mail.  Requests for Exclusion must be served on Class Counsel and the Settlement Administrator by certified mail, return receipt requested and received **no later than 5 p.m. CT on March 6, 2024**.  Requests for Exclusion may be mailed as follows:

Questions? Visit www.cook-diamondback.com or call toll-free at 1-877-595-0197

5

| Settlement Administrator | Class Counsel |
|---|---|
| Cook v. Diamondback Settlement c/o JND Legal Administration, Settlement Administrator P.O. Box 91231 Seattle, WA 98111 | Rex A. Sharp Scott B. Goodger Sharp Law, LLP 4820 W. 75th Street Prairie Village, KS 66208 |

**If you do not follow these procedures—including mailing the Request for Exclusion so that it is received by the deadline set out above—you will not be excluded from the Settlement Class, and you will be bound by all of the orders and judgments entered by the Court regarding the Settlement, including the release of claims.**  If you validly request exclusion as described above, you will not receive any distribution from the Net Settlement Fund, you cannot object to the Settlement, and you will not have released any claim against the Released Parties.  You will not be legally bound by anything that happens in the Litigation.

> **C.    You May Remain a Member of the Settlement Class, but Object to the Settlement, Allocation Methodology, Distribution Schedule, Plaintiff's Attorneys' Fees, Litigation Expenses, Administration, Notice, and Distribution Costs, or Incentive Award**

Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, any term of the Settlement Agreement, the Allocation Methodology, the Distribution Schedule, the request for Plaintiff's Attorneys' Fees and Litigation Expenses and Administration, Notice, and Distribution Costs, or the request for an Incentive Award to the Class Representative may file an objection as set forth in Section 10 of the Settlement Agreement.  An objector must file with the Court and serve upon Class Counsel and Diamondback's Counsel by certified mail, return receipt requested a written objection containing the following: (a) a heading referring to *Cook Children's Health Foundation, a/k/a W.I. Cook Foundation, Inc., et al. v. Diamondback E & P LLC*, Case No. 5:21-cv-00359-D, United States District Court for the Western District of Oklahoma; (b) a statement as to whether the objector intends to appear at the Final Fairness Hearing, either in person or through counsel, and, if through counsel, counsel must be identified by name, address, and telephone number; (c) a detailed statement of the specific legal and factual basis for each and every objection; (d) a list of any witnesses the objector may call at the Final Fairness Hearing, together with a brief summary of each witness's expected testimony (to the extent the objector desires to offer expert testimony and/or an expert report, any such evidence must fully comply with the Federal Rules of Civil Procedure, Federal Rules of Evidence, and the Local Rules of the Court); (e) a list of, and copies of, any exhibits the objector may seek to use at the Final Fairness Hearing; (f) a list of any legal authority the objector may present at the Final Fairness Hearing; (g) the objector's name, current address, current telephone number, and all owner identification numbers with the Diamondback

Questions? Visit www.cook-diamondback.com or call toll-free at 1-877-595-0197

6

Entities; (h) the objector's signature executed before a Notary Public; (i) identification of the objector's interest in wells for which the Diamondback Entities have remitted oil and gas proceeds (by well name, well number, payee name, payee number, and county in which the well is located) during the Claim Period and identification of any payments by date of payment, date of production, and amount; and (j) if the objector is objecting to any portion of the Plaintiff's Attorneys' Fees or Litigation Expenses and Administration, Notice, and Distribution Costs, or an Incentive Award sought by Class Representative or Class Counsel on the basis that the amounts requested are unreasonably high, the objector must specifically state the portion of such requests he/she/it believes is fair and reasonable and the portion that is not. Such written objections must be filed with the Court at the address below:

> Clerk of the Court
> United States District Court for the Western District of Oklahoma
> 200 NW 4th Street
> Oklahoma City, OK 73102

The same written objection must be served on Class Counsel and Diamondback's Counsel, via certified mail return receipt requested, and received **no later than 5 p.m. CT by March 6, 2024**, at the addresses set forth above for Class Counsel and the Court and below for Diamondback's Counsel.

| Diamondback's Counsel | |
|---|---|
| John J. Griffin, Jr.<br>Crowe & Dunlevy<br>324 N. Robinson Ave.<br>Suite 100<br>Oklahoma City, OK 73102 | John F. Shepherd<br>Christopher A. Chrisman<br>Michelle R. Seares<br>Holland & Hart LLP<br>P.O. Box 8749<br>555 17th Street, Suite 3200<br>Denver, CO 80201-8749 |

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE SETTLEMENT (OR ANY PART THEREOF) AND WILL NOT BE ALLOWED TO PRESENT ANY OBJECTIONS AT THE FINAL FAIRNESS HEARING.**

Questions? Visit www.cook-diamondback.com or call toll-free at 1-877-595-0197

7

**D.    You May Retain Your Own Attorney to Represent You at the Final Fairness Hearing**

You have the right to retain your own attorney to represent you at the Final Fairness Hearing.  If you retain separate counsel, you will be responsible to pay his or her fees and expenses out of your own pocket.

**V.    Availability of Filed Papers and More Information**

This Notice summarizes the Settlement Agreement.  You may obtain a free copy of the Settlement Agreement with its exhibits, as well as other relevant documents, from the settlement website at www.cook-diamondback.com, or you may request copies by contacting the Settlement Administrator.  In addition, the pleadings and other papers filed in the Litigation, including the Settlement Agreement, are available for inspection at the Office of the Clerk of the Court, whose address is set forth above, and may be obtained from the Clerk's office directly.  The records are also available online for a fee through the PACER service at www.pacer.gov.  If you have any questions about this Notice, you may consult an attorney of your own choosing at your own expense or Class Counsel.

**PLEASE DO NOT CONTACT THE JUDGE OR THE COURT CLERK ASKING FOR INFORMATION REGARDING THIS NOTICE.**

TIMOTHY D. DIGIUSTI
CHIEF UNITED STATES DISTRICT JUDGE

Questions? Visit www.cook-diamondback.com or call toll-free at 1-877-595-0197

8

# Exhibit D



## *Cook Children's Health Foundation V. Diamondback E&P LLC*
## Case No. 5:21-cv-00359-D (W.D. Okla.)
## Requests for Exclusion Received

| ID | Name | Date Received |
|----|------|---------------|
| D76KHXPE84 | SRO LAND & MINERALS LP | 2/21/2024 |
| DUQXM5DWYL | JUSTIN R CLEMENTS | 2/21/2024 |
| DZHJDW94MX | GENE G CLEMENTS EDWARDS | 2/21/2024 |
| D3Y7LQNX6U | ED ARMSTRONG RANCHES LP | 2/23/2024 |
| DDMJ7KF486 | MAGNOLIA, LLC | 2/23/2024 |
| DX3P72AQT8 | M BRAD BENNETT | 2/23/2024 |
| D3PJKAQE82 | MES LAND & MINERALS LP | 2/26/2024 |
| DAT8ERY5QK | MONROE PROPERTIES INC | 2/26/2024 |